UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LIBERTY MUTUAL PERSONAL
INSURANCE COMPANY; LM INSURANCE
CORPORATION; LM GENERAL
INSURANCE COMPANY; AMERICAN
ECONOMY INSURANCE COMPANY;
SAFECO INSURANCE COMPANY OF
ILLINOIS; STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY; STATE AUTO
PROPERTY AND CASUALTY INSURANCE
COMPANY; and LIBERTY SURPLUS
INSURANCE CORPORATION,

          Plaintiffs,

v.

ALLAN SCHWARTZ MEDICAL CENTER
PC; TOTAL HEALTH SERVICE P.C.;
CORE HEALTH SERVICES LLC; FAITH
PHYSICAL THERAPY LLC; BODY IN
MOTION CARE PHYSICAL THERAPY
LLC; TROY CHIROPRACTIC
CONSULTATION LLC; TROY RX
PHARMACY LLC; ANGELA TOBIA; and
MOHAMAD SADEK, D.O.,

          Defendants.

C.A. No. _____

**Demand for Jury Trial**

## **COMPLAINT**

Plaintiffs Liberty Mutual Personal Insurance Company, LM Insurance

Corporation, LM General Insurance Company, American Economy Insurance

Company, Safeco Insurance Company of Illinois, State Automobile Mutual

1

Insurance Company, State Auto Property and Casualty Insurance Company, and Liberty Surplus Insurance Corporation (collectively, "Liberty Mutual" and/or "plaintiffs") hereby allege as follows.

## I.   <u>INTRODUCTION</u>

1.     This is a case about healthcare providers that target individuals who claim to have been injured in motor vehicle accidents, and the agents and representatives of the same, and who engaged in a scheme to defraud Liberty Mutual by submitting and causing to be submitted false and fraudulent records, bills, and invoices over interstate wires and through the U.S. Mail for treatment and services that were not actually performed, were unlawful, were medically unnecessary, were fraudulently billed, and were charged at excessive rates in violation of applicable statutes and regulations, including the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*.

2.     Defendants Allan Schwartz Medical Center PC ("ASMC"), Total Health Service P.C. ("Total Health"), Core Health Services LLC ("Core Health"), Faith Physical Therapy LLC ("Faith PT"), Body in Motion Care Physical Therapy LLC ("Body in Motion"), Troy Chiropractic Consultation LLC ("Troy Chiropractic"), Troy Rx Pharmacy LLC ("Troy Rx"), Angela Tobia ("Tobia"), and Mohamad Sadek, D.O. ("Sadek") (collectively, the "defendants") each conspired to,

and did in fact, defraud Liberty Mutual by perpetuating an insurance billing fraud scheme in violation of federal and state law.

3.     The insurance fraud scheme perpetrated by the defendants was designed to, and did in fact, result in payments from Liberty Mutual to and for the benefit of the defendants.

4.     As a result of the defendants' fraudulent acts, Liberty Mutual has paid hundreds of thousands of dollars to them related to the patients at issue in this Complaint.

5.     All of the acts and omissions of the defendants described throughout this Complaint were undertaken intentionally.

6.     By this Complaint, and as detailed in each count set out below, Liberty Mutual brings this action for: (1) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) and (d); (2) common law fraud; (3) civil conspiracy; (4) payment under mistake of fact; and (5) unjust enrichment.  Liberty Mutual also seeks declaratory relief that no previously denied and pending insurance claims submitted to it by the defendants are compensable.

## II.     THE PARTIES

### A.     PLAINTIFFS

7.     Liberty Mutual Personal Insurance Company and Liberty Surplus Insurance Corporation are companies duly organized and existing under the laws of

the State of New Hampshire, with their principal place of business in Boston, Massachusetts.

8.     LM Insurance Corporation, LM General Insurance Company, and Safeco Insurance Company of Illinois are companies duly organized and existing under the laws of the State of Illinois, with their principal places of business in Boston, Massachusetts.

9.     American Economy Insurance Company is a company duly organized and existing under the laws of the State of Indiana, with its principal place of business in Boston, Massachusetts.

10.     State Automobile Mutual Insurance Company is a company duly organized and existing under the laws of the State of Ohio, with its principal place of business in Boston, Massachusetts.

11.     State Auto Property and Casualty Insurance Company is a company duly organized and existing under the laws of the State of Iowa, with its principal place of business in Boston, Massachusetts.

12.     At all times relevant to the allegations contained in this Complaint, the plaintiffs were authorized to conduct business in the State of Michigan.

## B.   DEFENDANTS

### 1.   Allan Schwartz Medical Center PC

13.   Defendant ASMC is a professional corporation organized under the laws of the State of Michigan.

14.   At all relevant times, ASMC was operated and conducted by defendants Core Health, Faith PT, Body in Motion, Troy Chiropractic, Troy Rx, Tobia, and Sadek.

15.   ASMC billed Liberty Mutual for services that were not rendered, that were unlawful and medically unnecessary (to the extent they were rendered at all), and that were billed at unreasonable rates in relation to several Liberty Mutual insureds and claimants, including the patients identified in Exhibit 1.

### 2.   Total Health Service P.C.

16.   Defendant Total Health is a professional corporation organized under the laws of the State of Michigan.

17.   At all relevant times, Total Health was operated and conducted by defendants Body in Motion, Troy Rx, Tobia, and Sadek.

18.   Total Health billed Liberty Mutual for services that were not rendered, that were unlawful and medically unnecessary (to the extent they were rendered at all), and that were billed at unreasonable rates in relation to several Liberty Mutual insureds and claimants, including the patients identified in Exhibit 2.

### 3.    Core Health Services LLC

19.    Defendant Core Health is a limited liability company organized under the laws of the State of Michigan.

20.    Core Health's member is defendant Tobia, who is a citizen of the State of Michigan.

21.    At all relevant times, Core Health was operated and conducted by defendants ASMC, Body in Motion, Tobia, and Sadek.

22.    Core Health billed Liberty Mutual for services that were not rendered, that were unlawful and medically unnecessary (to the extent they were rendered at all), and that were billed at unreasonable rates in relation to several Liberty Mutual insureds and claimants, including the patients identified in Exhibit 3.

### 4.    Faith Physical Therapy LLC

23.    Defendant Faith PT is a limited liability company organized under the laws of the State of Michigan.

24.    Faith PT's member is Louay Al Soudani, who, upon information and belief, is a citizen of the State of Michigan.

25.    At all relevant times, Faith PT was operated and conducted by defendants ASMC and Sadek.

26.    Faith PT billed Liberty Mutual for services that were not rendered, that were unlawful and medically unnecessary (to the extent they were rendered at all),

6

and that were billed at unreasonable rates in relation to several Liberty Mutual insureds and claimants, including the patients identified in Exhibit 4.

### 5.    Body in Motion Care Physical Therapy LLC

27.    Defendant Body in Motion is a limited liability company organized under the laws of the State of Michigan.

28.    Body in Motion's member is Yousif Afan, who, upon information and belief, is a citizen of the State of Michigan.

29.    At all relevant times, Body in Motion was operated and conducted by defendants ASMC, Total Health, and Sadek.

30.    Body in Motion billed Liberty Mutual for services that were not rendered, that were unlawful and medically unnecessary (to the extent they were rendered at all), and that were billed at unreasonable rates in relation to several Liberty Mutual insureds and claimants, including the patients identified in Exhibit 5.

### 6.    Troy Chiropractic Consultation LLC

31.    Defendant Troy Chiropractic is a limited liability company organized under the laws of the State of Michigan.

32.    Troy Chiropractic's member is defendant Tobia, who is a citizen of the State of Michigan.

33.    At all relevant times, Troy Chiropractic was operated and conducted by defendants ASMC, Tobia, and Sadek.

34.    Troy Chiropractic billed Liberty Mutual for services that were not rendered, that were unlawful and medically unnecessary (to the extent they were rendered at all), and that were billed at unreasonable rates in relation to several Liberty Mutual insureds and claimants, including the patients identified in Exhibit 6.

### 7.    **Troy Rx Pharmacy LLC**

35.    Defendant Troy Rx is a limited liability company organized under the laws of the State of Michigan.

36.    Troy Rx's member is Hala Hussieni, who, upon information and belief, is a citizen of the State of Michigan.

37.    At all relevant times, Troy Rx was operated and conducted by defendants ASMC, Total Health, and Sadek.

38.    Troy Rx billed Liberty Mutual for services that were medically unnecessary (to the extent they were rendered at all) and that were billed at unreasonable rates in relation to several Liberty Mutual insureds and claimants, including the patients identified in Exhibit 7.

### 8.    **Angela Tobia**

39.    Defendant Tobia is a resident and citizen of the State of Michigan.

8

40.     At all relevant times, Tobia operated and controlled defendants ASMC, Total Health, Core Health, and Troy Chiropractic.

### 9.     Mohamad Sadek, D.O.

41.     Defendant Sadek is a resident and citizen of the State of Michigan.

42.     At all relevant times, Sadek operated and controlled defendants ASMC, Total Health, Core Health, Faith PT, Body in Motion, Troy Chiropractic, and Troy Rx.

## III.   JURISDICTION AND VENUE

43.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this action relating to the claims brought by the plaintiffs under 18 U.S.C. § 1961, *et seq.* because they arise under the laws of the United States.

44.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the amount in controversy, exclusive of interest and costs, exceeds $75,000 against each defendant and because it is between citizens of different states.

45.     Supplemental jurisdiction over the plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

46.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the vast majority of the acts at issue in this Complaint were carried out within the Eastern District of Michigan.

## IV.   **BACKGROUND ON THE DEFENDANTS AND THEIR SCHEME**

47.    The defendants used ASMC, Total Health, Core Health, Faith PT, Body in Motion, Troy Chiropractic, and Troy Rx (collectively, the "defendant clinics") to submit exorbitant charges to Liberty Mutual for purported medical services, testing, medications, and equipment that were not actually provided, were unlawful, were not medically necessary, and were fraudulently billed.

48.    The purpose of the scheme was to generate the highest possible amount of charges to Liberty Mutual seeking payment of benefits under the Michigan No-Fault Act in order to take advantage of the personal injury protection benefits provided for by the Act.

49.    The defendants are all related and utilized a system of inter-referrals between the defendant clinics to direct patients for excessive, unnecessary, and not actually rendered treatment, testing, services, medical equipment, and medications in order to generate excessive and unreasonable bills to Liberty Mutual.

50.    Reflecting the close relationship between the defendants, during the period at issue in this Complaint, ASMC, Troy Chiropractic, and Troy Rx were all located at the same street address in Troy, Michigan.

51.    Total Health, Core Health, and Body in Motion were located at the same street address in Sterling Heights, Michigan during periods at issue in this Complaint.

52.    100% of the patients at issue in this Complaint for whom Troy Chiropractic billed Liberty Mutual also were patients of ASMC.

53.    Over 85% of the patients at issue in this Complaint for whom Troy Rx billed Liberty Mutual also were patients of ASMC or Total Health.

54.    Over 70% of the patients at issue in this Complaint for whom Body in Motion billed Liberty Mutual also were patients of ASMC or Total Health.

55.    Almost 70% of the patients at issue in this Complaint for whom Core Health billed Liberty Mutual also were patients of ASMC.

56.    The interrelationship and close coordination between the defendants also is demonstrated by the substantial overlap in control of the defendant clinics and of the individuals who allegedly provided services to patients at the defendant clinics.

57.    According to filings with the State of Michigan Department of Licensing and Regulatory Affairs, defendant Tobia was the Resident Agent or manager of defendants ASMC, Core Health, and Troy Chiropractic during the period of time at issue in this case.

58.    Defendant Sadek is a physician who allegedly evaluated patients at both ASMC and Total Health, and he also was the president of Total Health.

59.    Allan Schwartz, D.O. ("Schwartz") is a physician who has been previously sued for fraudulent conduct similar to that described herein, and allegedly

provided services to patients at ASMC, Total Health, Core Health, and Body in Motion.

60.    Geoffrey Sagala, D.C. ("Sagala") is a chiropractor who has been previously sued by insurers for fraudulent conduct similar to that described herein, and allegedly provided services to patients at ASMC, Total Health, Core Health, and Troy Chiropractic.

61.    The close relationship between each of the defendants also is demonstrated by the fact that alleged patient services, to the extent they were actually rendered, frequently were provided by one (1) defendant clinic at the address of another defendant clinic, and at times were then billed by a third defendant clinic or another entity controlled by the defendants.

62.    For example, on May 30, 2024, Sagala claimed to provide chiropractic and physical therapy services to patient M.S. (Claim No. 056817154)[1] at Troy Chiropractic, which had also billed Liberty Mutual for x-rays ordered by ASMC one (1) week earlier.

63.    The purported May 30, 2024 treatment, however, was billed by Core Health and its bill identified the service location as Body in Motion:

---

[1] To protect the confidentiality of the patients at issue herein, Liberty Mutual refers to them by initials and Liberty Mutual claim number. The defendants are aware of the Liberty Mutual claim number, as the defendants included the claim number on the bills they submitted to Liberty Mutual.



64.     In an attempt to disguise their fraudulent conduct, the defendants also utilized other business entities they controlled to bill for alleged services, such as an entity called Trinity Billing LLC ("Trinity Billing") that was owned and operated by defendant Tobia.

65.     As an example of this practice, one medically unnecessary service frequently ordered and billed by the defendants was experimental Nervomatrix treatment, which numerous Michigan state courts have determined is not compensable under the No-Fault Act for reasons detailed further herein.

66.     When Nervomatrix treatment allegedly was performed at defendant Body in Motion, it was billed by Trinity Billing.

67.     The fraudulent scheme described herein was driven by defendants Tobia and Sadek, who worked with their associates, including other medical clinics and medical providers, to induce individuals who claimed to have been involved in

motor vehicle accidents to report to the defendant clinics for unnecessary services and treatment.

68.   The patients herein were seeking little to no medical treatment independently, before they were directed to the defendant clinics.

69.   Patients were induced to report initially to ASMC or Total Health (collectively, the "defendant medical clinics"), where each received orders for a similar, predetermined course of treatment beginning with an initial evaluation that the defendants used to make a collection of vague diagnoses intended to justify purported treatment, testing, and services at the defendant medical clinics and orders for services from the other defendant clinics.

70.   As part of this predetermined practice and beginning at patients' initial evaluations, the defendant medical clinics automatically and without regard to actual medical need provided each patient with a disability finding, ordered physical therapy (billed by defendants Faith PT and Body in Motion), prescribed a similar collection of medications (billed by defendants ASMC or Troy Rx), ordered x-rays for each area of the body where the patient allegedly reported pain (billed by Troy Chiropractic), ordered urine drug testing (billed by the defendant medical clinics), ordered experimental treatment (billed by Core Health), and supplied patients with one or more items of durable medical equipment ("DME") (billed by the defendant medical clinics).

71.    The defendant clinics also ordered frequent, unnecessary patient reevaluations – often every two (2) weeks if not more frequently – to provide automatic and ongoing disability findings, orders for continued physical therapy and additional testing and treatment, prescription refills, and durable medical equipment, all without regard to patients' actual physical conditions, to generate further billing.

72.    As an example of this practice, on May 13, 2024, just two (2) days after her reported automobile accident, ASMC billed for an initial evaluation of patient M.S. (Claim No. 056817154), at which time it noted only mild stiffness in M.S.'s back and shoulders.

73.    Despite these entirely unremarkable findings, which also are entirely typical following a minor accident in which a person is experiencing nothing more than expected, minor soft tissue injuries, ASMC issued a disability finding claiming that M.S. was unable to drive and required attendant care and household replacement services, billed for four (4) items of DME and urine drug testing, ordered five (5) x-rays that were billed by Troy Chiropractic, prescribed four (4) medications that were billed by Troy Rx, ordered experimental Nervomatrix treatment that was billed by Core Health along with alleged chiropractic treatment beginning the next day, prescribed four (4) to six (6) weeks of physical therapy that Body in Motion began billing for the next day, and ordered a reevaluation for just two (2) weeks later.

74.     The foregoing services, testing, and treatment ordered by ASMC with respect to M.S. were medically unnecessary and entirely improper and were ordered because they were part of the defendants' predetermined treatment protocol and in order to generate as much billing to Liberty Mutual as possible.

75.     The foregoing practices and the further practices of the defendants detailed below demonstrate that the defendants' services were not medically necessary, were fraudulent, and were designed and implemented solely to generate billing under the No-Fault Act for which the defendants were not actually entitled to payment.

## V.     BILLING FOR SERVICES NOT RENDERED

76.     The defendants regularly submitted bills to Liberty Mutual seeking payment for treatment and services that were never rendered to patients at issue herein.

77.     The defendants' pervasive conduct of faxing and mailing demands for payment for services that were not rendered is indicative of their goal to submit as many bills for payment as possible regardless of whether the treatment was actually rendered and whether it was medically necessary (discussed in detail *infra*).

78.     All of the bills submitted by the defendants to Liberty Mutual through interstate wires and the U.S. Mail seeking payment for treatment that never occurred are fraudulent.

79.     Liberty Mutual is not required to pay the defendants for services that were never provided to patients at issue in this Complaint and is entitled to recover any payments tendered to the defendants as a result of their fraudulent billing for services not rendered.

## A.     ASMC AND TOTAL HEALTH BILLED FOR SERVICES NOT RENDERED

80.     In addition to billing Liberty Mutual for medically unnecessary and improper services as detailed *infra*, ASMC and Total Health also routinely billed for services that were not actually rendered at all.

81.     One way ASMC and Total Health billed for services not performed was by charging for additional services in conjunction with their frequent claimed patient evaluations and reevaluations even though no additional services were actually provided.

82.     For example, on dates that patients allegedly reported to ASMC and Total Health for reevaluations, both medical clinics frequently also billed for allegedly providing separate "complex chronic care coordination services" that did not actually occur.

83.     ASMC and Total Health billed for the "complex chronic care coordination services" they allegedly provided using Current Procedural

Terminology ("CPT") code[2] 99487, which is a chronic care management billing code that is appropriately billed only when a provider provides at least sixty (60) minutes of non-face-to-face services per calendar month to a patient with two (2) or more chronic conditions that are expected to last at least twelve (12) months.

84.    To bill using CPT code 99487, the provider must (1) obtain patient consent to provide the service, (2) provide the patient with a written personalized care plan, (3) offer twenty-four (24) hour patient access to a member of the patient's care team to address urgent needs, and (4) document the services provided in the patient's health records.

85.    ASMC and Total Health routinely billed CPT code 99487 despite not remotely satisfying the foregoing requirements.

86.    For example, ASMC billed for an initial examination of K.K. (Claim No. 055441272) on December 8, 2023, which was less than two (2) weeks after her alleged automobile accident, at which time ASMC diagnosed K.K. with a variety of sprains, pain, and other minor soft tissue injuries.

87.    Despite the fact that (1) it was not possible that any of K.K.'s conditions could be considered "chronic" or likely to continue for twelve (12) months (since

---

[2] CPT codes are published by the American Medical Association ("AMA") to facilitate the efficient processing of healthcare charges by insurance carriers and other private and governmental healthcare payors.  Providers subject to the Health Insurance Portability and Accountability Act are required to use CPT codes when submitting bills.

they began less than two (2) weeks earlier), (2) ASMC did not document any service to K.K. that would constitute chronic care management, and (3) it was not possible that ASMC provided sixty (60) minutes of non-face-to-face services to K.K. during the month at that time since it was the first date K.K. allegedly visited ASMC, ASMC nevertheless billed Liberty Mutual an additional $225 using CPT code 99487 for chronic care management services that were not actually provided.

88.     As another representative example, Total Health billed Liberty Mutual for an initial examination of H.S. (Claim No. 058087456) on October 23, 2024, which was just six (6) days after her alleged accident, meaning that none of the vague pain complaints diagnosed by Total Health that day could be considered chronic or likely to continue for twelve (12) months.

89.     Despite the fact that (1) it was not possible that Total Health had provided sixty (60) minutes of non-face-to-face services to H.S. during the month since October 23, 2024 was the first day she was seen at Total Health, (2) Total Health did not document providing any service that could be construed as chronic care management, (3) it did not document obtaining H.S.'s consent to provide any such services, and (4) it did not have a written personalized care plan for the management of any chronic conditions, Total Health billed Liberty Mutual $225 for allegedly providing chronic care management services to H.S. that were not and could not have been provided.

90.     As yet another example, ASMC billed for an initial evaluation of patient D.W. (Claim No. AB949-556954) on July 18, 2024, at which time it also billed CPT code 99487 for allegedly providing sixty (60) minutes of non-face-to-face chronic care services to D.W. during the month that could not have actually been provided since it was the first time D.W. was evaluated by ASMC and ASMC's own report that day states that its treatment plan simply consisted of "initiating conservative treatment."

91.     Another way both ASMC and Total Health billed for services that were not actually provided was by billing CPT code 99199, which is an unlisted billing code reserved for special or unusual services that are not otherwise included in an established billing code.

92.     For a service to be billable at all using CPT code 99199, at a minimum it (1) must be for a service that is not encompassed by another billing code or service, and (2) must be well-documented and include evidence of how and why the service was necessary to the treatment of the patient's condition.

93.     Despite these requirements, ASMC and Total Health each routinely billed Liberty Mutual using CPT code 99199 at the same time they billed for standard evaluation and management services despite not documenting or actually providing any special services that were not included in the standard evaluation and management codes they billed.

94.     For example, ASMC billed CPT code 99199 in addition to billing CPT code 99204 for the initial evaluation of patient D.W. (Claim No. AB949-556954) on July 18, 2024, but identified no additional or atypical services allegedly provided to justify such billing.

95.     ASMC and Total Health attempted to justify billing CPT code 99199 by claiming it was used for simply providing disability certificates to patients.

96.     Disability evaluations are standard services that are included in the regular patient evaluations charges already billed by ASMC and Total Health (like its charges using CPT code 99204) and are not separately billable.

97.     The defendants knew these services did not constitute separately billable services but submitted charges to Liberty Mutual using CPT code 99199 anyway, with ASMC billing $768.29 on each such occasion and Total Health billing either $768.29 or $650 on each occasion, for the purpose of inducing Liberty Mutual to make additional payments to them that they knew they were not entitled to receive.

## B.    THE DEFENDANTS BILLED FOR DURABLE MEDICAL EQUIPMENT NOT PROVIDED

98.     Defendants ASMC and Total Health routinely billed for a similar collection of DME with respect to almost every patient as part of their predetermined treatment protocol.

99.     The defendant medical clinics also billed for these items of DME even when they were not actually provided to patients.

21

100.   For example, patient A.S. (Claim No. AU-766186) reported that during an initial evaluation at ASMC, the physician examining him tried to provide him with a variety of different items of DME, including a heating pad, but that he "explained that I already had one, so [the physician] proceeded to tell me that to just use a heating pad that I had a home."

101.   Despite not actually supplying any heating pad to A.S., ASMC billed Liberty Mutual for that item of DME it did not actually provide.

102.   As another example, patient N.K. (Claim No. 046364417) testified that the only DME provided to her by ASMC was a TENS unit, neck pillow, and a neck brace.

103.   Despite this, ASMC also billed Liberty Mutual for an electric heating pad and a lumbar brace that it did not actually provide to N.K.

104.   All of the DME billed by the defendants that was not actually provided to patients was fraudulent, and Liberty Mutual is entitled to recover all amounts it was induced to pay to the defendants as a result of this fraudulent conduct.

### C.   TROY CHIROPRACTIC BILLED FOR SERVICES NOT RENDERED

105.   Troy Chiropractic routinely billed for x-rays that it did not perform.

106.   One way it did this was by billing for x-ray services that were different from what actually occurred (if any x-rays were taken at all).

107.   For example, Troy Chiropractic frequently billed for x-rays using billing codes that require a medical provider to obtain and document two (2) or three (3) views in order to bill even though only a single view (if any) was actually obtained.

108.   Troy Chiropractic billed for these services that were not actually provided because it could bill a higher amount for x-rays with two (2) or three (3) views than it could bill for an x-ray consisting of a single view.

109.   As one representative example, at her initial evaluation at ASMC on September 11, 2023, ASMC ordered a left shoulder x-ray and a lumbar spine x-ray for N.D. (Claim No. AU-798349).

110.   The reports for N.D.'s x-rays that day indicate they were performed by Serrano Radiology Consulting, not Troy Chiropractic, and the x-ray images included with the reports indicate that a single view was obtained for each area of the body.

111.   Even though only a single view was obtained of N.D.'s shoulder, Troy Chiropractic billed Liberty Mutual using CPT code 73030, which is a billing code that requires the provider to obtain a minimum of two (2) views.

112.   Troy Chiropractic followed the same practice with respect to N.D.'s lumbar spine x-ray, billing for that service using CPT code 72100, which is the billing code for a radiological examination of the lumbosacral spine in which two

(2) or three (3) views are obtained, even though again only a single view was obtained.

113.   As another example, Troy Chiropractic billed for alleged cervical spine x-rays with respect to S.H. (Claim No. 055834362) using CPT code 72040 and representing that it had obtained two (2) views of the cervical spine.

114.   At most only a single view of S.H.'s cervical spine was obtained, meaning that Troy Chiropractic billed for a service that was not rendered because it could charge more for that service than for the service that was actually provided (if any occurred at all).

115.   Troy Chiropractic also billed for other types of services that it did not provide.

116.   For example, on September 19, 2023, N.D. (Claim No. AU-798349) allegedly presented to ASMC for "x-ray reading" and was seen by a nurse practitioner who claimed that the x-ray results were reviewed with N.D. and that she would continue physical therapy, but made no mention that N.D. would begin chiropractic treatment.

117.   Despite this, Troy Chiropractic billed Liberty Mutual for an alleged initial evaluation of N.D. that day and also billed for allegedly performing mechanical traction and therapeutic massage, none of which occurred.

118.   Confirming that Troy Chiropractic did not actually provide these, N.D. denied ever receiving any chiropractic treatment.

### D.   BODY IN MOTION AND FAITH PT BILLED FOR PHYSICAL THERAPY SERVICES THAT WERE NOT PERFORMED

119.   Defendants Body in Motion and Faith PT each routinely billed Liberty Mutual for physical therapy services that were not provided.

120.   One way the defendants did this was by billing for more units of timed physical therapy services than were actually provided.

121.   Each unit billed for a timed physical therapy code represents fifteen (15) minutes of a specific treatment or service, of which at least eight (8) minutes must be actually performed in order to submit a bill for that timed code.

122.   For example, one (1) unit of a time-based code may be billed for treatment lasting between eight (8) and twenty-two (22) minutes (assuming all other requirements are met, such as that treatment was done with constant supervision and on a one-on-one basis when required) and a second unit may be billed only after twenty-three (23) minutes of purported treatment is completed and so forth as illustrated by the chart below:

| Units | Minutes of Treatment |
|-------|----------------------|
| 1 | 8 – 22 |
| 2 | 23 – 37 |
| 3 | 38 – 52 |
| 4 | 53 – 67 |
| 5 | 68 – 82 |

25

123.   In addition, while services billed in fifteen (15) minute increments require the performance of at least eight (8) minutes of that particular treatment in order to submit a charge, only one (1) unit of therapy may be rounded up on any given date of service regardless of how many different timed codes are billed.

124.   When multiple units of timed codes are billed on the same date, all units of all such codes must be aggregated and the total time spent must be rounded to the nearest full unit to obtain the total number of billable units.

125.   The following timed CPT codes were frequently billed by the defendants: 97110 (therapeutic exercises), 97530 (therapeutic activity), 97112 (neuromuscular reeducation), 97140 (manual therapy therapy), 97124 (therapeutic massage), and 97035 (therapeutic ultrasound).

126.   In order to bill for three (3) units of any of the foregoing services, the total amount of time spent across the services must be at least thirty-eight (38) minutes; and it is not permissible to bill for three (3) different units of service – such as one (1) unit of exercise, one (1) unit of manual therapy, and one (1) unit of ultrasound – where just eight (8) minutes was spent on each services, for a total of just twenty-four (24) minutes.

127.   Contrary to these well-established rules, the defendants routinely billed for more units of timed services than were actually rendered.

128.   For example, with respect to A.S. (Claim No. 055834362), on April 8, 2024, Body in Motion billed for five (5) units of timed services – consisting of one (1) unit of manual therapy, two (2) units of therapeutic activity, and two (2) units of therapeutic exercise – which requires a minimum of 68 minutes in order to bill.

129.   Body in Motion's report of its claimed services that day document just 56 minutes of attended, timed services that were provided to A.S., meaning that only four (4) units could be billed.

130.   Faith PT followed a similar practice to those of Body in Motion described above.

131.   For example, on May 8, 2023, Faith PT billed for five (5) units of timed physical therapy services consisting of three (3) units of therapeutic exercise, one (1) unit of therapeutic massage, and one (1) unit of manual therapy, with respect to patient Y.T. (Claim No. 051201734).

132.   Faith PT reported that a total time of just 60 minutes was spent on timed services, meaning that only four (4) units of service were actually provided.

133.   Faith PT repeated this same practice of billing for an extra unit of a timed service that was not actually provided dozens of times with respect to Y.T. alone.

134.   Every time Body in Motion and Faith PT billed for more units of timed physical therapy services than are permitted by the applicable billing guidelines of those services, they billed for a service that was not rendered.

135.   Faith PT also billed for services that were not actually rendered by falsifying the amount of time that patients received treatment.

136.   For example, according to Faith PT sign in/sign out sheets, on May 8, 2023, Y.T. was signed in when she arrived at Faith PT at 4:00 and signed out at 5:10, for a total of 70 minutes spent at Faith PT's offices:



137.   Despite this, Faith PT's daily treatment note for Y.T. on May 8, 2023 claims that she received 75 minutes of treatment.

138.   Even if Y.T. spent no time waiting to begin treatment after she arrived, talking to the physical therapist, using the restroom, or switching between physical therapy modalities (all of which she almost certainly did), it still is not possible that Faith PT rendered all of the treatment to Y.T. for which it billed Liberty Mutual.

139.   As another example of these defendants' billing for services, Body in Motion and Faith PT fabricated the time spent on physical therapy modalities.

140.   For example, on April 21, 2023, Faith PT billed Liberty Mutual with respect to H.D. (Claim No. 051698776) for six (6) units of timed services requiring

constant attendance (which corresponds to a minimum of 83 minutes of treatment) and one (1) unit of unattended electronic stimulation treatment (which requires a minimum of at least eight (8) additional minutes), for a total of at least 91 minutes of treatment on that date.

141.   Faith PT's sign in records for that date prove that H.D. was present at Faith PT for a total of just 67 minutes, meaning that it is not possible that Faith PT actually provided all of the services it billed to Liberty Mutual that day:



142.   Body in Motion and Faith PT billed for services that were not rendered in other ways as well.

143.   Among the services frequently billed by both Body in Motion and Faith PT that were not actually provided was therapeutic exercise, which each clinic billed using CPT code 97110.

144.   CPT code 97110 is defined by the AMA as a therapy procedure using direct, one-on-one care to provide therapeutic exercise to develop strength, endurance, range of motion, and flexibility.

145.   CPT code 97110 is a timed service that requires skilled and direct one-on-one attention from a qualified therapist for the entirety of treatment in order to properly bill.

146.   CPT code 97110 cannot be billed relative to previously taught exercises, patients performing exercises independently, or for patients' use of exercise equipment without direct, one-on-one intervention utilizing skills of the therapist.

147.   In order to properly bill for these kinds of direct, one-on-one services, the documentation must clearly indicate the need for the service and have evidence to support the necessity of one-on-one care requiring the skills of a therapist.

148.   Contrary to these requirements, the defendants routinely billed for therapeutic exercises without documenting either the need for direct supervision or that such supervision actually occurred.

149.   For example, Faith PT repeatedly billed for therapeutic exercise with respect to M.A. (Claim No. AU-789496) without documenting the need for constantly attended one-on-one care or that the same occurred, as in the following example from August 11, 2023, which simply includes checked boxes identifying exercises that M.A. allegedly performed that day:

| Exercises | 8/11/23 | | |
|---|---|---|---|
| Neck ROM exercises | | | |
| Flexion/extension | ✓ | | |
| Rotation to R and L | | | |
| Side flexion to R and L | | | |
| Back ROM exercises | | | |
| Flexion/extension | ✓ | | |
| Side flexion to R and L | | | |
| Rotation to R and L | | | |
| Shoulder Girdle exercises | | | |
| Shoulder ROM exercises | | | |
| Flexion/Extension | ✓ | | |
| ER/IR | | | |
| Abduction/Adduction | | | |
| Shoulder isometrics | | | |
| Shoulder Thera band exercises/dumbbells | | | |
| Wall Push ups | | | |
| Standing Leg exercises | | | |
| Kicking Forward | ✓ | | |
| Kicking Sideways | | | |
| Kicking Backwards | | | |
| Semi-squats | | | |
| Heel/Toe raises | | | |
| Supine Lying exercises | | | |
| SLR, Hip Abduction, Hip-knee flexion, Ankle pumps | | | |
| Static quadriceps, Static gluts, Static hip add/abd | | | |
| Bridging, Pelvic rotation | | | |
| Knee to chest | | | |
| Prone back extension | | | |
| Treadmill / elliptical | | | |
| Arm Bike | ✓ | | |
| Leg bike | ✓ | | |
| Shoulder Wheel | | | |
| Exercise Ball | | | |
| | | | |
| Physical Therapist Sign: | ∂ | | |

150.   It is clear that constant, one-on-one supervision was not required or provided to M.A. for each of the foregoing exercises.

151.   Patients do not need to be re-taught how to use an exercise bike, treadmill, or elliptical machine at every visit or require a therapist to give constant attention to the activity, making it inappropriate to represent (and bill for) these types of exercises as skilled, one-on-one therapy.

152.   Body in Motion also routinely billed for therapeutic activity that did not occur using CPT code 97530.

31

153.   CPT code 97530 is defined by the AMA as therapeutic activities to improve functional performance involving direct, one-on-one patient supervision for the entirety of patient treatment.

154.   As with CPT code 97110, CPT code 97530 is a timed service that requires skilled and direct one-on-one attention from a qualified therapist for the entirety of treatment in order to properly bill.

155.   Many of the purported activities billed by Body in Motion using CPT code 97530 were for services that did not require one-on-one treatment at each appointment.

156.   Despite this, Body in Motion routinely billed for purported one-on-one therapeutic activities using CPT code 97530 even though patients were engaged only in basic activities like riding a stationary bike that did not require one-on-one patient attention from a therapist.

157.   As one example of this type of billing for one-on-one therapeutic activity that did not occur, the following is an excerpt from a daily treatment note from defendant Body in Motion for V.Z. (Claim No. 053864920) on October 10, 2024, which reports that V.Z.'s "therapeutic activities" for that date included riding a stationary bike for fourteen (14) minutes:

Therapeutic Activity (TA)

1. Upright Bike with UE
   Duration: 14

2. Shoulder Flexion with Cane/Wand
   Reps: 5  Hold: 5

3. Scapular Clocks
   Reps: 10

4. Posture Against Wall
   Duration: 5

5. Body Mechanics Dressing/Putting on Socks Correct
   Posture
   Duration: 5

158.   Body in Motion nevertheless claimed that it provided twenty-three (23) minutes of one-on-one therapeutic activities with respect to V.Z. on that date, and billed for two (2) units of the service, at least one (1) unit of which was not actually rendered since one-on-one attention was not required for V.Z. simply to ride a stationary bike.

159.   As another example, Body in Motion billed for two (2) units of therapeutic activity with respect to R.F. (Claim No. 401829710) on July 31, 2025, but the only so-called "therapeutic activity" that R.F. engaged in that day was riding a bike and walking on a treadmill, neither of which are billable using CPT code 97530:

Therapeutic Activity (TA)

1. Stationary Upright Bike
   Duration: 8

2. Upright Bike with UE
   Duration: 8

3. Treadmill Walking
   Duration: 8

160.   Every time Body in Motion billed CPT code 97530 for the use of a stationary bike, a treadmill, or for other activities that did not require one-on-one care, it billed for a service not rendered.

161.   In addition to the foregoing, it also is improper to submit bills for timed exercises when the time spent for each treatment is not accurately recorded, as billing for timed services requires providers to accurately track time by the minute.

162.   By way of example, proper timekeeping would record that a treatment for therapeutic exercise started and ended at specific times such as 1:54 p.m. to 2:05 p.m., for a total of eleven (11) minutes and manual therapy began at 2:08 p.m. and ended at 2:30 p.m. for a total of twenty-two (22) minutes.  The total adds up to thirty-three (33) minutes, which would be rounded to two (2) billable units.

163.   In addition, the time recorded must only be for the time during which a qualified provider was providing necessary direct, one-on-one, skilled therapy to the patient.

164.   The defendants' timekeeping did not comply with these standards and all of the billing Body in Motion and Faith PT submitted for timed services that were not properly documented to allow for any form of authentication were fraudulent.

165.   Rather than accurately tracking and recording time, both Body in Motion and Faith PT routinely billed for therapeutic exercises using CPT code 97110 and Body in Motion billed for therapeutic activity using CPT code 97530 without recording the times exercises started and ended or even accurately recording the amount of time actually spent on each exercise allegedly performed.

166.   In fact, Faith PT and Body in Motion's records reporting the total time allegedly spent on various services were routinely falsified, as each used boilerplate, automatically generated language to claim that they always spent exactly the same amount of time for each patient at every appointment.

167.   For example, Faith PT routinely (and improperly for the reasons already explained) billed for three (3) units of therapeutic exercise, but never identified what exercises were allegedly performed, did not record the time spent on each exercise, and did not record the start and stop times for exercises, as required in order to bill for therapeutic exercise.

168.   Instead, whenever it billed for therapeutic exercise, Faith PT simply used boilerplate forms that claimed forty (40) minutes were spent on the service, including with respect to H.D. (Claim No. 051698776), where an identical claim was made over multiple dates in April and May, 2023.

169.   It is not possible that Faith PT spent exactly the same amount of time on every treatment at each of H.D.'s treatment sessions, which proves that Faith PT's records were simply copied-and-pasted between visits and did not accurately record the time spent on any treatment.

170.   Faith PT also used the same copied-and-pasted records claiming to perform the same treatment for the same number of minutes across multiple different

patients, including with respect to Y.T. (Claim No. 051201734) on January 19, 2023 as a representative example.

171.   Body in Motion followed the same practice as Faith PT, using cut-and-pasted language across daily treatment records in order to claim that certain exercises and other services were provided but without recording the start and stop times for each or even the amount of time allegedly spent on each exercise.

172.   As one example, Body in Motion's daily physical therapy note for M.S. (Claim No. 056817154) for July 23, 2024 listed eight (8) different exercises that M.S. supposedly performed, but did not track the time for those exercises.

173.   Despite this, Body in Motion included a "Charge Summary" with its daily note claiming that exactly twenty-three (23) minutes were spent on therapeutic exercise, which is the minimum time necessary to bill for two (2) unit of the service as already explained.

174.   Further demonstrating that Body in Motion did not accurately record or report the time spent on exercises or other services, on October 15, 2024, it reported that V.Z. (Claim No. 053864920) completed a different set of exercises (but again did not record the time allegedly spent on each exercise).

175.   Despite completing an entirely different set of exercises, Body in Motion claimed that V.Z.'s treatment that day again included exactly twenty-three (23) minutes of therapeutic exercise.

176.   It is not possible that every patient spent exactly the same amount of time on exercises at every appointment, proving that the time reported by Body in Motion for performing exercises and other services in its records were fabricated.

177.   Every time Body in Motion and Faith PT billed for a service based on reports that were fabricated or that did not record information that is required to bill for the service, they billed for a service that was not rendered and that was fraudulent.

178.   Liberty Mutual is entitled to recover all amounts it was induced to pay to the defendants as a result of their fraudulent billing for physical therapy services that were not actually rendered.

## VI.   **UNLAWFUL AND UNLICENSED TREATMENT AND SERVICES**

### A.   **UNLICENSED ISSUANCE OF DME**

179.   In order to legally issue DME in Michigan, a provider must obtain a license from the Michigan Board of Pharmacy.

180.   A license from the Michigan Board of Pharmacy is required for all "drugs **and devices** manufactured, distributed, prescribed, dispensed, administered, or issued in this state . . . ."  Mich. Comp. Laws § 333.17722 (emphasis added).

181.   Defendants ASMC and Total Health routinely billed Liberty Mutual for purportedly issuing DME to patients.

182.   ASMC and Total Health never possessed a valid license to issue DME in the State of Michigan at any time relevant to this action.

37

183.  Because ASMC and Total Health did not possess a license to issue DME to patients, said DME was unlawful and not compensable under the No-Fault Act.  Mich. Comp. Laws § 500.3157(1).

184.  ASMC has unlawfully billed Liberty Mutual more than $158,000 for DME it allegedly issued to patients since January 1, 2020.

185.  Total Health has unlawfully billed Liberty Mutual more than $8,500 in DME charges since September 1, 2024.

186.  Liberty Mutual is not required to pay the defendants for DME issued without a license and is entitled to restitution for payments it was induced to make by the defendants' unlawful bills.

**B.    UNLICENSED TRANSPORTATION SERVICES**

187.  ASMC billed Liberty Mutual for alleged transportation of patients despite not possessing a valid license to perform such transportation services in Michigan.

188.  The Michigan Department of Licensing and Regulatory Affairs ("LARA") regulates one (1) to eight (8) passenger transportation vehicles and requires all transportation companies utilizing such vehicles to obtain a valid limousine carrier license, which must be renewed yearly with proof of automobile liability insurance.

189.   ASMC failed to comply with these licensure requirements, and it did not possess a license to provide transportation services within the State of Michigan at any time during the period at issue in this case.

190.   Despite not possessing a license permitting it to provide transportation services, ASMC billed Liberty Mutual for transportation services.

191.   For example, ASMC billed Liberty Mutual for purported transportation services to M.S. (Claim No. 056817154) on multiple dates between May 24, 2024 and July 3, 2024, despite the fact that it did not possess a license from the State of Michigan to provide transportation services and therefore could not legally bill for such services.

192.   Every time ASMC billed Liberty Mutual for transportation services when it did not possess a license to render such services, it billed for a service that was unlawful and not compensable under the No-Fault Act.

193.   Liberty Mutual is not required to pay ASMC for unlawful transportation provided, if at all, without a valid license, and is entitled to restitution for all payments made for these unlicensed and unlawful services.

## VII.   **UNREASONABLE     AND     UNNECESSARY     FRAUDULENT TREATMENT**

194.   The defendants' willingness to bill Liberty Mutual for services that were never rendered and not lawfully provided demonstrates their willingness to also bill for treatment that was unreasonable and unnecessary.

195.   The defendants' goal was to bill for as much as possible, regardless of whether treatment was reasonably necessary to patients' care, recovery, or rehabilitation, in order to generate bills for submission to Liberty Mutual.

196.   To maximize their financial gain, the defendants adhered to a predetermined protocol of unnecessary, indiscriminate, and excessive treatment, as discussed more fully below.

197.   The defendants' purported treatment violated standards of care in the medical community, as services were not indicated, redundant, excessive, and repeated without any benefit to patients.

198.   None of the facts discussed herein were known to Liberty Mutual until it undertook its investigation that resulted in the commencement of this action, and are not evident within the four corners of the medical records and bills submitted to Liberty Mutual by the defendants.

199.   The unnecessary treatment billed by the defendants, discussed more fully below, includes the treatment and patients set out in the charts annexed hereto at Exhibits 1 through 7.

200.   All of the claims submitted by the defendants to Liberty Mutual through the U.S. Mail and interstate wires seeking payment for unnecessary, excessive, unlawful, and unreasonable treatment are fraudulent.

201. Liberty Mutual is not required to pay the defendants for treatment that was medically unnecessary, and it is entitled to the return of money paid as a result of the defendants' fraud.

A. **THE DEFENDANTS' PREDETERMINED TREATMENT PROTOCOL**

202. Many of the patients at issue in this case were involved in minor automobile accidents that caused few, if any, actual injuries beyond minor soft tissue injuries and conditions such as short-term muscular pain and stiffness that is to be expected following an automobile accident.

203. Because these patients had few actual injuries that required legitimate treatment, testing, or services, the defendants implemented a predetermined treatment protocol that they applied to almost every patient beginning at the initial patient evaluation at ASMC or Total Health.

204. At that time, the defendant medical clinics automatically made a collection of similar, vague diagnoses for each patient to justify a predetermined course of treatment that they applied to nearly every patient.

205. The predetermined course of "treatment" by ASMC and Total Health was in fact simply a way to generate billing for testing and other services by the other defendants and included (1) prescriptions for physical therapy for which patients were directed to defendants Body in Motion and Faith PT, (2) prescriptions for a collection of similar medications billed by defendants ASMC and Troy Rx, (3)

41

orders for urine drug testing ("UDT") made without regard to whether patients were being prescribed narcotics or other medications necessitating such testing and billed by the defendant medical clinics, (4) orders for one (1) or more items of DME billed by defendants ASMC and Total Health, (5) orders for x-rays and redundant chiropractic treatment billed by defendant Troy Chiropractic, and (6) orders for experimental and medically unnecessary treatments billed by defendant Core Health.

206.   As part of the defendants' predetermined treatment protocol, the defendant medical clinics also ordered frequent reevaluations for patients, typically every two (2) to four (4) weeks after the initial evaluation and continuing indefinitely that were used to (1) provide ongoing disability findings, (2) continue orders for physical therapy without regard to patients' actual physical conditions, (3) order additional items of DME, (4) refill medications or prescribe additional medications, (5) order repeated, unnecessary urine drug testing, and (6) order additional testing such an electromyography ("EMG") based on clinically unsupported diagnoses.

207.   As one example of the defendants' implementation of their predetermined treatment protocol, D.J. (Claim No. 491572510), a 19-year-old female, reported to ASMC for an initial evaluation on January 17, 2024, with complaints of low back pain and headaches following an alleged automobile accident five (5) days earlier.

208.   ASMC diagnosed D.J. with low back pain, muscle cramps and spasms, a lumbar back sprain, and headaches, and issued a disability finding, ordered physical therapy, prescribed four (4) different medications (none of which were controlled substances), ordered urine drug testing, ordered x-rays of the lumbar spine and thoracic spine, and issued DME consisting of a heating pad, TENs unit, and a massage chair.

209.   Demonstrating the extent to which all of the foregoing services were simply ordered as part of a predetermined treatment protocol and not based on patients' individualized conditions or medical need, ASMC billed for alleged evaluations of two (2) other patients who claimed to be involved in the same alleged accident as D.J. on the same day: T.Y. (Claim No. 491572510), who was an 18-year-old male allegedly with complaints of lumbar spine pain, left ankle pain and headaches, and C.W. (Claim No. 491572510), who was a 35-year-old male with reported complaints of pain in his lumbar spine, cervical spine, right leg, right arm, and headaches.

210.   Despite their different ages, sexes, comorbidities, and complaints, the treatment plans for T.Y. and C.W. were nearly identical to that of D.J., with both receiving exactly the same disability findings, physical therapy orders, medications, and DME as D.J., as well as the same orders for x-rays of the lumbar spine and thoracic spine and urine drug testing.   Indeed, the only difference between the

treatment plan for T.Y. and C.W. and that of D.J. was that ASMC also ordered one

(1) additional x-ray for T.Y. and C.W than it ordered for D.J.

211.   Further demonstrating the extent to which ASMC applied the same

treatment plan to every patient, the "plan" it included in its initial evaluation reports

were often simply copied and pasted from one patient report to another.

212.   For example, the following language was included in the treatment

"plan" from ASMC's initial evaluation of Y.T. (Claim No. 051201734), who was a

9-year-old male, on October 20, 2022:

---

**Plan**

Briefly discussed with patient further options if symptoms still persist or fail to provide a significant improvement that the patient appreciates, with return of meaningful activity, weaning pain medication and resuming normal daily routines, Should this be the case, we will first have to review all images, perform diagnostic invasive monitoring of nerve conduction/muscle response to electrical stimulation done at the office, I also briefly went over other less invasive options indicated after careful patient selection including several intervention Pain Procedures performed under sedation, Again, I emphasized that availability of options that can range from very helpful to curative after careful patient selection, Further education and details may be necessary, but only during the scheduled follow up appointment, I clearly explained that safe medical standards of care and practice protocols requires us to mention alternatives to Surgical intervention, usually considered as last resort, and only if deemed necessary, Patient understands clearly and acknowledges our step-by-step approach.,

---

213.   The above language from the reported "plan" for Y.T. is identical to the

"plan" from ASMC's initial evaluation on January 7, 2022, of patient N.J. (Claim

No. 047896991), who was a 65-year-old female:

---

**Plan**

Briefly discussed with patient further options if symptoms still persist or fail to provide a significant improvement that the patient appreciates, with return of meaningful activity, weaning pain medication and resuming normal daily routines, Should this be the case, we will first have to review all images, perform diagnostic invasive monitoring of nerve conduction/muscle response to electrical stimulation done at the office. I also briefly went over other less invasive options indicated after careful patient selection including several intervention Pain Procedures performed under sedation. Again, I emphasized that availability of options that can range from very helpful to curative after careful patient selection. Further education and details may be necessary, but only during the scheduled follow up appointment. I clearly explained that safe medical standards of care and practice protocols requires us to mention alternatives to Surgical intervention, usually considered as last resort, and only if deemed necessary. Patient understands clearly and acknowledges our step-by-step approach.

---

214. Total Health's implementation of the defendants' predetermined treatment protocol was nearly identical to that of ASMC.

215. For example, Total Health billed for an initial evaluation of patient N.H. (Claim No. 050336621) on May 29, 2024, at which time it reported that N.H. complained of neck and lumbar back pain as well as pain in both shoulders and both heels.

216. Total Health issued a disability finding, recommended physical therapy, prescribed six (6) different medications (none of which were controlled substances), ordered five (5) x-rays and three (3) magnetic resonance imagings ("MRIs"), and ordered urine drug testing.

217. Total Health's initial evaluation report for N.H., who was 73 years old at the time, also included the following language under his treatment "plan":

| Plan |
| --- |
| Discussed with patient further options if symptoms still persist or fail to provide a significant improvement that the patient appreciates, with return of meaningful activity, weaning pain medication and resuming normal daily routines, Should this be the case, we will first have to review all images, perform diagnostic invasive monitoring of nerve conduction/muscle response to electrical stimulation done at the office |
| Explained less invasive options indicated after careful patient selection including several Intervention Pain Procedures performed under sedation, as well as emphasizing the availability of options that can range from very helpful to curative after careful patient selection, |
| If further education and details are necessary, will schedule further follow up appointment. I clearly explained that safe medical standards of care and practice protocols including but not limited to: Injections, Chiropractor Manipulation, Osteopathic Manipulation, PT/OT, and Surgical Intervention as last resort, if deemed medically necessary, Patient understands clearly and acknowledges our step-by-step approach., |

218. Total Health's use of this copied and pasted language further proves the extent to which the defendants conspired together across each of the defendant clinics to implement a predetermined treatment plan without regard to individual

patients' actual needs, since exactly the same language also was utilized in evaluation reports from ASMC, as in the following example from patient R.C. (Claim No. 057416133), who was twenty-three (23) years old when he was allegedly evaluated by ASMC on August 13, 2024:

| Plan |
| --- |
| Discussed with patient further options if symptoms still persist or fail to provide a significant improvement that the patient appreciates, with return of meaningful activity, weaning pain medication and resuming normal daily routines, Should this be the case, we will first have to review all images, perform diagnostic invasive monitoring of nerve conduction/muscle response to electrical stimulation done at the office Explained less invasive options indicated after careful patient selection including several intervention Pain Procedures performed under sedation, as well as emphasizing the availability of options that can range from very helpful to curative after careful patient selection |
| If further education and details are necessary, will schedule further follow up appointment. |
| I clearly explained that safe medical standards of care and practice protocols including but not limited to: Injections, Chiropractor Manipulation, Osteopathic Manipulation, PT/OT, and Surgical intervention as last resort, if deemed medically necessary, Patient understands clearly and acknowledges our step-by-step approach. |

219. Treatment that is rendered and billed pursuant to a predetermined treatment protocol, that is not ordered based on patients' actual medical conditions, is ordered without regard to patients' response to prior treatment, and that is redundant and duplicative is not medically necessary and Liberty Mutual is entitled to recover all amounts it was induced to pay to the defendants as a result of the foregoing conduct.

### B. UNNECESSARY TESTING BILLED BY ASMC AND TOTAL HEALTH

220. As part of their predetermined treatment protocol and as part of the defendants' scheme to bill as much as possible for every patient, ASMC and Total Health ordered and billed for testing that was not clinically indicated and was medically unnecessary.

### 1.   <u>Unnecessary Urine Drug Testing</u>

221.   ASMC and Total Health both routinely ordered and billed for urine drug testing that was not medically necessary and that was not used to guide patient treatment.

222.   Urine drug testing is only properly used in the context of pain management treatment when it is random and designed to ascertain whether patients are abusing or diverting potentially dangerous medications.

223.   Guidelines published by the Centers for Medicare and Medicaid Services ("CMS") for the proper use of presumptive urine drug testing instruct that it should be performed in the context of a physician prescribing opioid medications to treat patients for chronic pain, and advises that testing may be appropriate in such cases to monitor for issues such as substance abuse disorder, medication adherence, diversion, efficacy, and side effects.

224.   CMS guidelines also provide that in order to establish the medical necessity for such testing, specific elements must be established during a clinical assessment and documented in the patient's medical record including (1) patient history, physical examination, and previous laboratory findings, (2) the patient's current treatment plan, (3) a review of the prescribed medications, and (4) a risk assessment plan.

225.   According to CMS guidelines, a risk assessment plan must evaluate the patient's risk potential for abuse and diversion, document that assessment, and categorize the patient as low risk, moderate risk, or high risk.

226.   The frequency of random testing for a given patient should depend on the provider's completed risk assessment of the patient.

227.   CMS guidelines provide that random testing of low-risk patients being prescribe opioids one (1) to two (2) times every twelve (12) months is appropriate, random testing of moderate risk patients one (1) to two (2) times every six (6) months is appropriate, and random testing of high-risk patients one (1) to three (3) times every three (3) months is appropriate.

228.   The Centers for Disease Control and Prevention ("CDC") guidelines on opioids for chronic pain recommend that "[w]hen prescribing opioids for chronic pain, clinicians should use urine drug testing before starting opioid therapy and consider urine drug testing at least annually to assess for prescribed medications as well as other controlled prescription drugs and illicit drugs."

229.   Absent a particularized, patient-specific, and documented medical reason, patients in a pain management setting who are not prescribed opioids or other medication at risk for potential for abuse and diversion do not require drug testing.

230.   The vast majority of patients at issue in this Complaint were not prescribed opioids or any other medications by ASMC or Total Health that would

require drug testing at the time they were ordered, yet contrary to the above guidelines, orders for drug testing were automatically included in the defendant medical clinics' initial treatment plans and were frequently repeated at monthly reevaluations.

231.    The defendants were aware that there was no medical reason to order urine drug testing with respect to the vast majority of the patients at issue in this case, and as a result both ASMC and Total Health routinely added boilerplate language to their evaluations reports in an attempt to create the appearance of medical necessity for the testing by falsely claiming that such testing was "recommended for current prescribed medications" and that the testing was ordered to monitor for use of "non-prescribed medications of abuse."

232.    As one example of the defendants' improper orders for urine drug testing, ASMC ordered and billed for urine drug testing with respect to H.D. (Claim No. 051698776) at her initial visit on April 24, 2023, even though it did not prescribe any medications at risk of abuse or diversion for H.D. and the testing was therefore medically unnecessary and improper.

233.    Despite the fact that the results of the urine drug testing on April 24, 2023 were entirely negative, including for the use of any non-prescribed medications or drugs, and even though it still did not prescribe any medications that would justify urine drug testing, ASMC ordered and billed for additional urine drug testing for

H.D. during at least two (2) of H.D.'s monthly reevaluations over the course of the next four (4) months.

234.   None of the urine drug testing that ASMC ordered and billed with respect to H.D. was medically necessary, and ASMC never referred to the results of the testing or used the testing to guide H.D.'s treatment, demonstrating that it was ordered only in order to generate additional billing to Liberty Mutual.

235.   As another example of the defendants' unnecessary orders and billing for urine drug testing, Total Health ordered and billed for urine drug testing with respect to patient H.S. (Claim No. 058087456) during an evaluation on November 20, 2024.

236.   At the time it ordered the urine drug testing for H.S., Total Health had not and did not prescribe any medications for H.S. that were likely to be abused or diverted, meaning the testing was medically unnecessary and improper.

237.   Even though the results of the testing on November 20, 2024 were negative, meaning H.S. was not using any drug not prescribed to her, and even though it still did not prescribe any medications that could conceivably justify such testing, Total Health ordered and billed for additional urine drug testing for H.S. at a reevaluation less than two (2) months later on January 17, 2025.

238.   In an attempt to justify the unnecessary testing with respect to H.S., the evaluation report from that reexamination included boilerplate language that falsely

claimed that the testing was ordered as part "of a baseline evaluation for a new patient or an established patient who is being considered for chronic opioid therapy or other long-term therapy involving controlled substances" even though Total Health was not actually considering prescribing such medications and rather claimed that it discussed "weaning off medication" with H.S. on that date.

239.   Urine drug testing that is ordered and performed pursuant to a predetermined protocol and without medical justification is not compensable and Liberty Mutual is entitled to repayment of amounts it was induced to pay by the defendants' misrepresentations as to the necessity of urine drug testing.

### 2.   Excessive and Unnecessary Electrodiagnostic Testing

240.   Defendants ASMC and Total Health also routinely utilized patient reevaluations to bill for medically unnecessary electrodiagnostic testing that was not indicated when ordered and that was not used to inform patients' course of treatment.

241.   Electrodiagnostic testing includes EMG and nerve conduction studies ("NCS").

242.   EMG testing involves the use of an electromyography machine to record the electrical activity of a skeletal muscle to evaluate the existence of muscle and/or nerve abnormalities.

243.   A needle EMG is an invasive procedure that involves the insertion of a small needle electrode directly into an individual muscle.

244.   To perform NCS, the clinician must measure nerve impulses following nerve stimulation and obtain information regarding the speed (i.e., velocity), timing, and strength (i.e., amplitude) of nerve impulses.

245.   NCS involve non-invasive tests in which peripheral nerves in the upper and lower limbs (i.e., arms and legs) are stimulated through the skin by the application of an electrical current.

246.  For EMG and NCS testing to be medically justified, the clinical examination must indicate symptoms or signs of radiculopathy, which is a pathological condition of the nerve roots where one or more root nerves along the spine become damaged causing radiating pain to the part of the body served by the particular nerve.

247.   The patient's subjective symptoms alone cannot properly support the performance of an electrodiagnostic study.

248.   EMG and NCS are not indicated where, as is the case with nearly all patients of the defendant clinics, neurologic deficits are not detected in the patients.

249.   Despite this, the defendants routinely ordered EMG and NCS testing based solely on a patient's subjective reporting and for purposes of diagnosis, rather than through a physical exam, without first making objective findings of abnormal neurology, and without first giving sufficient time for conservative treatments to be effective.

250.   Therefore, the defendants subjected patients to unnecessary pain and risk of infection and billed Liberty Mutual for unnecessary and unjustified EMG and NCS.

251.   The defendants also ordered EMG and NCS even when patients' subjective complaints did not indicate possible radiculopathy, further demonstrating that the studies were simply ordered as part of the defendants' predetermined protocol and not based on medical necessity.

252.   For example, ASMC billed for an initial evaluation of Y.H. (Claim No. 052103652) on March 22, 2023, at which time its treatment plan included an order for an EMG of the upper extremities even though Y.H. did not report any symptoms of possible radiculopathy such as radiating pain, numbness, or tingling in the upper extremities, nor was any diagnosis of radiculopathy made by ASMC.

253.   ASMC thereafter billed for numerous monthly reevaluations of Y.H. for more than a year, including on June 19, 2024, at which time Y.H. reported pain in his lower back, neck, and shoulders, but still did not report any radiating pain, numbness, or tingling in either his upper or lower extremities.

254.   Despite the absence of any radicular symptoms, ASMC diagnosed Y.H. with cervical radiculopathy, but not lumbar radiculopathy, and its treatment plan for the June 19, 2024 reevaluation made no mention that it was ordering either EMGs or NCS.

255.   Nevertheless, despite the absence of radicular complaints, a lumbar radiculopathy diagnosis, or any clear order for such testing, ASMC billed for allegedly performing an EMG and NCS of the lower extremities on Y.H. just eight (8) days later, on June 27, 2024.

256.   As another example, on July 12, 2023, ASMC ordered an EMG of the upper extremities for B.W. (Claim No. AU-767006) despite identifying no radicular components or clinical findings that would justify the performance of an EMG.

257.   ASMC subsequently submitted a purported "Medical Necessity Letter" to Liberty Mutual for the EMG, but again failed to identify any clinical findings to support that testing, and instead claimed that it was ordered "for the treatment of cervical sprain, lumbar sprain, spasm of back and myalgia" (muscle pain), none of which conditions are a reason to perform an EMG.

258.   Electrodiagnostic testing that is performed pursuant to a predetermined protocol and without medical justification is not compensable pursuant to the No-Fault Act, and Liberty Mutual is entitled to repayment of amounts it was induced to pay by the defendants' misrepresentations as to electrodiagnostic testing.

259.   Liberty Mutual is not required to pay the defendants under the No-Fault Act for EMGs and NCS that were not medically necessary, unsupported by an appropriate medical diagnosis, not used to guide patients' treatment, or that were ordered solely to generate additional billing.

### C.   UNNECESSARY PHYSICAL THERAPY

260.   The physical therapy services prescribed by defendants ASMC and Total Health and billed by defendants Faith PT and Body in Motion were not designed or intended to treat patients' actual injuries, but rather were used as a means to generate billing.

261.   Valid physical therapy treatment requires the services be objectively indicated and cannot be based on a patient's subjective complaints of pain alone, nor can the services ordered be predetermined.

262.   Contrary to these principles, once patients received physical therapy prescriptions from ASMC and Total Health and reported to Faith PT or to Body in Motion, the defendants implemented a highly similar and predetermined course of physical therapy treatments that resulted in unnecessary treatment, if any treatment actually was provided at all.

263.   The defendants' predetermined course of physical therapy involved (1) two (2) to three (3) units of therapeutic exercise billed using CPT code 97110, (2) application of hot/cold packs billed using CPT code 97010, (3) electrical stimulation ("e-stim") billed using CPT code 97014, (4) ultrasound billed using CPT code 97035, and (5) manual therapy billed using CPT code 97140.

264.   The defendants' implementation of this predetermined course of treatment was so pervasive that with respect to the patients at issue in this case for

whom either Faith PT or Body in Motion submitted billing to Liberty Mutual, they submitted billing for therapeutic exercise with respect to 100% of patients, and they billed for e-stim and ultrasound with respect to more than 80% of all patients.

265.   Body in Motion included billing for manual therapy as part of its predetermined treatment, billing for that service with respect to more than 90% of patients.

266.   Body in Motion also included billing for one (1) to two (2) units of therapeutic activity in its predetermined collection of treatment, billing for that service with respect to 80% of the patients for whom it submitted billing to Liberty Mutual.

267.   Further demonstrating that this predetermined course of physical therapy was not ordered based on medical necessity or patients' actual physical conditions, the defendants routinely billed for these same services on nearly every alleged date of service.

268.   For example, between December 5, 2022 and May 11, 2023, Faith PT billed Liberty Mutual for 62 alleged dates of service for H.D. (Claim No. 051698776), and on each of those dates it billed for therapeutic exercise, massage therapy, manual therapy, e-stim, and ultrasound treatment.

269.   It is not possible that exactly the same course of treatment was appropriate for H.D. over a course of more than five (5) months and 62 dates of service.

270.   In fact, Faith PT never materially altered H.D.'s course of treatment during that five (5) month period despite knowing that the extensive treatment it billed was providing no meaningful benefit.

271.   In January 2023, at which time H.D. had been receiving physical therapy for approximately one (1) month, Faith PT allegedly performed a reevaluation of H.D. and noted that H.D. had pain in her neck, back, and left shoulder that she rated a six (6) out of ten (10).

272.   Three (3) months later, in April 2023, Faith PT billed for another reevaluation of H.D., at which time it reported exactly the same pain complaints as existed in January 2023, and reported that H.D.'s pain level was essentially unchanged, at a level of five (5) to six (6) out of ten (10).

273.   Despite the fact that four (4) months of Faith PT's predetermined course of physical therapy had not resulted in any benefit to H.D., Faith PT continued to recommend and bill for the same services, and its short-term goals, long-term goals, plan of care, and prognosis for H.D. in April 2023 were identical to those set in January 2023.

274.   Body in Motion followed a similar practice to Faith PT by ordering and continuing physical therapy without regard to patients' actual conditions.

275.   As an example, Body in Motion billed for alleged physical therapy to V.Z. (Claim No. 053864920) on 169 dates over a period of nearly sixteen (16) months from June 2023 through October 2024.

276.   Body in Motion billed for a similar collection of services throughout that sixteen (16) month period and never materially altered V.Z.'s treatment plan, as demonstrated by the fact that it billed for therapeutic exercise, therapeutic activities, manual therapy, and e-stim on at least 166 of the 169 dates of service.

277.   Moreover, Body in Motion continued to bill for these same services despite the fact the treatment resulted in no material improvement in V.Z.'s condition.

278.   On August 22, 2023, after approximately two (2) months of physical therapy at Body in Motion, V.Z. reported pain that was a six (6) out of ten (10).

279.   More than a year later, on October 7, 2024, Body in Motion reported that V.Z.'s pain remained at between a six (6) and eight (8) out of ten (10) (meaning she had not improved at all), yet it continued to report exactly the same treatment goals and plan for V.Z., including the same short-term goals that it had claimed a year earlier would be achieved in just two (2) weeks.

280.   As in the case of V.Z., Body in Motion and Faith PT regularly billed their predetermined treatments for excessive amounts of time.

281.   Indeed, as in the above examples, both physical therapy clinics continued to bill for these treatments even when the patients received no benefit from the physical therapy, meaning the treatment could not be possibly considered medically appropriate because when a patient is no longer making objective progress in physical therapy, the treatment plan must be changed or the patient discharged.

282.   Patients should rarely undergo physical therapy for more than four (4) to six (6) weeks, as after such time the physical therapy will have reached its maximum benefit and the patient should either cease in-office physical therapy or be recommended for a different type of treatment.

283.   Contrary to these guidelines, Body in Motion and Faith PT almost never altered patients' treatment plans and, as in the above examples, continued to recommend and bill for the same collection of services regardless of patient need or the response to treatment as already detailed above.

284.   As yet another example of this improper practice, Faith PT billed for alleged physical therapy to Y.T. (Claim No. 051201734) on 84 dates between October 24, 2022 and May 11, 2023.

285.   Despite billing for at least five (5) reevaluations of Y.T. over the course of more than six (6) months of alleged treatment, Faith PT never altered Y.T.'s

treatment and instead billed for the same four (4) physical therapy modalities – consisting of therapeutic exercise, manual therapy, massage, and e-stim – on at least 83 of the 84 dates of service.

286.   Faith PT did not even alter the exercises Y.T. allegedly performed, and claimed that Y.T. was continuing to perform exactly the same exercises at every visit.

287.   Moreover, Faith PT failed to alter Y.T.'s exercise and treatment regimen even though its predetermined treatment protocol provided no benefit to Y.T. and, in fact, if it had any effect at all, was harmful to Y.T.

288.   For example, on January 30, 2023, Faith PT reported that Y.T.'s pain intensity was a five (5) out of ten (10) and that he had pain in his cervical spine, lumbar spine, and left shoulder, yet on May 11, 2023 reported that his pain intensity remained a five (5) out of ten (10) but that he also now was experiencing pain in his thoracic spine and bilateral shoulders.

289.   Physical therapy that is ordered pursuant to a predetermined plan and continued without regard to the patient's needs is not medically necessary and is not compensable under the No-Fault Act.

### D.   UNNECESSARY EXPERIMENTAL TREATMENT

290.   After Michigan amended the No-Fault Act in 2019 to establish a fee schedule that took effect on July 2, 2021 and, among other changes, established

reimbursement limits based on Medicare payment schedules for Medicare reimbursable services, unscrupulous providers like the defendants began billing for experimental treatments in an attempt to circumvent those limitations by billing for purported services that are not covered by the No-Fault Act's fee schedule because they are unproven and medically unnecessary.

291.   The only reason the defendants ordered and billed for these experimental treatments instead of, or in addition to, other ways of addressing the same conditions was to try to end run the No-Fault Act's fee schedule by using billing codes that are not on the fee schedule.

292.   Treatment that is experimental, unproven, or that lacks evidence of efficacy for the condition it purports to address is not compensable under the No-Fault Act.

### 1.   Experimental and Ineffective Nervomatrix Treatment

293.   Beginning in March 2024, ASMC and Total Health began to order, and Core Health began to bill for, experimental and medically unnecessary services referred to as trigger point impedance imaging ("TPII") and localized intense neurostimulation therapy ("LINT") performed using a machine called a Nervomatrix (collectively, "Nervomatrix treatment").

294.   The defendants used Core Health to regularly bill Liberty Mutual $6,000 per date of alleged service for Nervomatrix treatment.

295.   The purported Nervomatrix treatment consisted of nothing more than purporting to identify (which is the "TPII" portion of the service) and attempt to relieve myofascial pain caused by trigger points through electrical stimulation (the "LINT" part of the service).

296.   Trigger points are areas of taut muscle bands or palpable knots of the skeletal muscle that are painful on compression and that are easily identified by routine manual evaluations, meaning there was no medical reason to perform TPII testing.

297.   Trigger points can be and routinely are addressed with simple treatments such as massage, application of cold packs, application of hot moist packs, ultrasound, electrical muscle stimulation, acupuncture, trigger point injections, and a variety of other methods that are more effective than the LINT the defendants allegedly performed and that are billed at rates far less than the defendants charged for Nervomatrix treatment.

298.   According to the Nervomatrix device's manufacturer, the treatment is intended to treat chronic low back pain, meaning a condition that persists for at least six (6) months and does not resolve spontaneously.

299.   The Nervomatrix treatment billed by Core Health was always medically unnecessary and has been determined by Michigan courts to be non-

compensable under the No-Fault Act because it is experimental, unproven, and has no evidence of efficacy.

300.   As an example of the defendants' fraudulent billing for Nervomatrix treatment, ASMC billed for an initial evaluation of M.S. (Claim No. 056817154) on May 13, 2024, just two (2) days after her alleged automobile accident, at which time it diagnosed M.S. with low back pain but made no diagnosis of myofascial pain or that her pain was caused by trigger points, and instead ordered x-rays of the lumbar spine.

301.   Despite the absence of any condition that could be considered chronic or any finding that M.S.'s pain was the result of a condition that Nervomatrix treatment was theoretically intended to address at all, ASMC immediately ordered Nervomatrix treatment to occur two (2) to three (3) times a week for eight (8) weeks.

302.   Core Health then immediately began to bill for Nervomatrix treatment on May 14, 2024 that was entirely medically unnecessary as demonstrated by the fact that neither Core Health nor ASMC ever evaluated whether the treatment was at all beneficial to M.S.

303.   Moreover, at the same time M.S. was purportedly receiving Nervomatrix treatment, she also was receiving both physical therapy and chiropractic treatment that also was ordered by ASMC, meaning that the

Nervomatrix treatment was redundant of other treatment and therefore also unnecessary for that additional reason.

304.   Almost all of the patients at issue in this Complaint who allegedly received Nervomatrix treatment were also undergoing physical therapy and other treatment intended to address the same condition as the Nervomatrix treatment.

305.   Not only was the Nervomatrix treatment that the defendants ordered for M.S. and other patients medically unnecessary in the context of those patients' overall clinical pictures and the other treatments they were receiving, the defendants' orders for the alleged treatment was excessive and far exceeded the standard of care established by the manufacturer of Nervomatrix machines.

306.   According to the CEO of the company that created the Nervomatrix machine, treatment should involve a total of (6) sessions over approximately three (3) weeks, after which pain should subside for four (4) to six (6) months.

307.   If patients do not respond to treatment after this initial treatment period, the treatment is not effective and there is no reason for it to continue.

308.   The defendants routinely ordered Nervomatrix treatment that far exceeded this amount of treatment to multiply their charges to Liberty Mutual.

309.   None of the Nervomatrix treatment billed by the defendants was medically necessary and it was not compensable under the No-Fault Act.

## 2.   Experimental and Unnecessary Shockwave Treatment

310.   Body in Motion billed for allegedly subjecting patients to experimental extracorporeal shock wave therapy ("ESWT") that was unnecessary and unhelpful.

311.   ESWT involves the application of high-energy acoustic waves to a patient's skin to supposedly break down tissue.

312.   The mechanism of ESWT treatment is a machine that uses compressed air to accelerate a projectile up to 80 to 90 kph within a guiding tube that strikes a metal applicator placed on the patient's skin.

313.   The application of ESWT is only approved by the United States Food and Drug Administration ("FDA") for two specific types of musculoskeletal injury: (1) lateral epicondylitis (commonly known as tennis elbow) and (2) chronic plantar fasciitis, neither of which are acute injuries that may be sustained in a motor vehicle accident.

314.   Body in Motion never billed for ESWT as a treatment for either of these FDA-approved conditions.

315.   Instead, Body in Motion billed for using ESWT as an unproven treatment for alleged back pain as yet another way to circumvent the fee schedule restrictions imposed by the amendments to the No-Fault Act for recognized treatments.

316.    The federal government has deemed ESWT to be medically unnecessary as a purported treatment for back and neck pain, and has stated that ESWT is "not reasonable or necessary for the treatment of musculoskeletal conditions," because "[t]he available evidence suggests that further research is needed to establish the efficacy and safety of high energy ESWT in the treatment of musculoskeletal conditions."

317.    Frequently when Body in Motion billed for ESWT, the treatment was never explicitly ordered at all, and no findings or explanation for why it was necessary or appropriate were made.

318.    For example, V.Z. (Claim No 053864920) allegedly received evaluations at both ASMC and Total Health, and both of those clinics issued prescriptions to V.Z. for physical therapy, but neither clinic ever specifically ordered ESWT.

319.    V.Z. then began receiving physical therapy at Body in Motion, which also performed its own evaluations of V.Z. and established a treatment plan that did not mention ESWT as a necessary service that V.Z. would receive.

320.    Despite this, on June 14, 2024, after V.Z. already had received physical therapy at Body in Motion for several months, Body in Motion began billing for ESWT to the lumbar spine without ever identifying any reason for the service and even though its own treatment plan for V.Z. at the time did not include ESWT.

321.    After V.Z. allegedly began receiving ESWT, Body in Motion continued to bill for reevaluations of V.Z., but never assessed whether ESWT was beneficial, did not even note that the treatment was being performed, and continued to report exactly the same treatment plan as the above example that did not include ESWT.

322.    One reason Body in Motion never included ESWT in its treatment plans or assessed whether prior ESWT was beneficial was that it knew that the treatment had no medical purpose and was unlikely to provide any benefit.  For example, before she began receiving ESWT, on June 7, 2024, V.Z. reported that her lumbar pain level was a six (6) out of ten (10), but after receiving the ESWT treatment for two (2) months V.Z. reported that her pain was a six (6) or seven (7) out of ten (10), meaning the treatment had provided no benefit and may have actually worsened her condition.

323.    Treatments such as ESWT that are experimental, not approved to treat the conditions for which they are allegedly used, that are included in treatment plans as a matter of course, and that are continued indefinitely without evaluating their effectiveness in order to generate bills and not because they were medically necessary or appropriate, are not compensable.

324.    Liberty Mutual is not required to remit payment for these treatments, and it is entitled to recover all amounts it was induced to pay to the defendants for these experimental treatments as a result of the defendants' wrongful conduct.

### 3.    <u>Experimental Laser Therapy</u>

325.   The defendants also billed Liberty Mutual for alleged Multiwave Locked System ("MLS") laser therapy, also known as low-level or low-power laser therapy (LLLT or LPLT), which purports to use red or infrared light to stimulate cells.

326.   Both ASMC and Core Health billed Liberty Mutual for MLS laser therapy during the period at issue in this Complaint.

327.   MLS laser therapy is another unproven and medically unnecessary treatment that the defendants have adopted in order to thwart the Michigan No-Fault medical fee schedule by billing for treatment that is not on that fee schedule.

328.   Low level laser devices have not been approved to treat any musculoskeletal conditions and there is scant medical evidence that they provide any relief beyond a placebo effect.

329.   Like other experimental treatments billed by the defendants, purported MLS laser therapy was ordered without regard to patients' conditions and repeated without any consideration of patients' conditions, reports of pain, or the effectiveness of prior treatment.

330.   These treatments were included in treatment plans as a matter of course in order to generate bills and not because they were medically necessary or

appropriate, and Liberty Mutual is not required to remit payment for these non-compensable alleged treatments.

331.   Demonstrating that orders for MLS laser therapy were not based on medical need, on occasions when the treatment was ordered by the defendants, the defendants routinely failed to identify any reason the treatment was necessary or indicate what part of the body the treatment was ordered for, and their records for performing the treatment did not even record the area of the body to which the treatment was allegedly rendered.

332.   As one example of these improper practices, ASMC billed for multiple sessions of alleged MLS laser therapy with respect to Y.H. (Claim No. 052103652) beginning on June 20, 2024, but a reevaluation report for Y.H. from just one (1) day before that treatment allegedly began did not include laser therapy as part of Y.H.'s treatment plan at all and did not identify any reason for beginning laser treatment at that time.

333.   The only mention of laser therapy in ASMC's records in the June 19, 2024 report was in the "Orders" sections of the report, which simply listed "Laser Therapy" but did not identify the area of the body where the treatment was to be administered.

334.   Further demonstrating that laser therapy served no medical purpose, at Y.H.'s next reevaluation on July 17, 2024, at which point Y.H. allegedly had

undergone at least two (2) sessions of MLS laser therapy, ASMC did not evaluate whether the treatment was beneficial, and its report did not mention the laser therapy at all.

335.   Nevertheless, ASMC continued to bill for MLS laser therapy, doing so on at least two (2) additional dates after the July 17, 2024 reevaluation.

### E.   UNNECESSARY DME

336.   Defendants ASMC and Total Health billed for DME that was not appropriate for the medical conditions diagnosed or in the context of the patients' treatment history and instead was simply ordered as part of the defendants' predetermined treatment protocol described previously.

337.   The defendants provided a similar collection of DME to patients that served no actual medical purpose.

338.   One item of purported DME frequently billed by both ASMC and Total Health was a so-called "massage chair," for which both defendants charged thousands of dollars.

339.   The defendants billed for massage chairs using CPT code E1399, which is a miscellaneous billing code for DME that does not have a specific assigned billing code, since massage chairs are not actually legitimate, compensable items of DME because they have no medical necessity and provide no actual treatment.

340.   Medicare, for example, does not cover massage chairs because they are considered personal convenience items.

341.   Confirming that the massage chairs routinely billed by the defendants had no medical purpose, ASMC's and Total Health's treatment plans included in their evaluation reports for the dates when so-called massage chairs were allegedly supplied to patients consistently fail to identify any medical necessity or reason for ordering those items.

342.   For example, ASMC billed for an initial examination of D.W. (Claim No. AB949-556954) on July 18, 2024.

343.   At that time, ASMC stated that it was ordering (and billed for) a massage chair, heating pad, cervical brace, and a cold compression device for D.W., but failed to identify any reason for ordering either the "massage chair" or any other DME because there was none.

344.   As another example, Total Health billed for an initial evaluation of H.S. (Claim No. 058087456) on October 23, 2024, which was just six (6) days after her alleged automobile accident.

345.   Despite the fact that it diagnosed only typical pain and stiffness in H.S. that could not have been expected to resolve normally just six (6) days after her accident, Total Health immediately ordered and billed Liberty Mutual $3,250.20 for a "massage chair" it allegedly supplied to H.S.

346.    Total Health's evaluation report also provided no reason that the "massage chair" was ordered or why it was medically necessary or appropriate, because it was not and it served no medical purpose.

347.    ASMC and Total Health also billed enormous and excessive amounts for cold compression devices, which they billed using the same miscellaneous CPT code E1399, as a purported treatment for their vague diagnoses of pain and sprains.

348.    Cold compression devices are most often used by providers to prevent and reduce complications of poor circulation, and the FDA has previously identified medical conditions for which the use of such device is indicated, which are primarily limited to vein and circulation disorders, open wounds, and post-surgical treatments.

349.    To the extent the type of cold compression therapy purportedly provided by the devices billed by the defendants is ever medically appropriate for orthopedic and/or soft tissue injuries, it is only during the acute phase of injury or in the immediate aftermath of surgery.

350.    Contrary to these indicated uses and in order to generate the maximum amount of bills for submission to Liberty Mutual, ASMC and Total Health often billed for cold compression devices allegedly issued to patients who had not undergone surgery and many months after their alleged accidents and who, if they were injured at all, were in the chronic rather than acute stage of injury.

351.  As one example of the defendants' improper orders for these cold compression devices, ASMC billed for a lumbar cold compression device it allegedly issued to D.W. (Claim No. AB949-556954) on July 18, 2024, which was more than four (4) months after his alleged automobile accident, meaning any lower back pain he was experiencing was chronic, not acute.

352.  Yet another item of unnecessary DME billed by the defendants was transcutaneous electrical nerve stimulation ("TENS") units, which are devices intended to provide pain relief by delivering electrical pulses through electrode pads placed on the skin.

353.  For many of the patients to whom the defendants supplied these devices, the units were redundant, and therefore medically unnecessary, since those patients already were receiving similar e-stim treatment multiple times a week as part of the ongoing physical therapy billed by the defendants.

354.  In many cases, the patients to whom the defendants issued TENS devices had been receiving e-stim treatment for many months without any improvement in their condition, indicating that e-stim treatment was ineffective and there was no medical reason to provide the patient with a TENS unit for use at home.

355.  For example, nine (9) months after her alleged accident, on March 21, 2024, ASMC billed for the alleged issuance of a TENS device to V.Z. (Claim No. 053864920).

356.   At the time V.Z. allegedly received the TENS device from ASMC, she had already been undergoing e-stim treatment at Body in Motion for nearly nine (9) months, with Body in Motion billing Liberty Mutual for the service 102 times prior to March 21, 2024.

357.   Despite this lengthy course of e-stim treatment (that V.Z. also continued to receive), ASMC reported in March 2024 that V.Z. continued to experience similar pain complaints to those reported at the outset of her treatment, meaning that the e-stim treatment was not effective at all.

358.   Nevertheless, ASMC ordered and billed for a TENS unit for V.Z. despite the fact that it knew that the treatment was ineffective and therefore not medically necessary.

359.   Other DME that was routinely billed by ASMC and Total Health were braces, pillows, and heating pads.

360.   This DME was ordered on a *pro forma* basis and had nothing to do with actual medical need.

361.   DME that was unnecessary and improper for patients' conditions and that was issued as a matter of course in order to generate billing and not based on individualized patient need is not compensable under the No-Fault Act.

362.   Liberty Mutual is not required to pay the defendants for DME that is unnecessary and is entitled to a return of monies it paid to the defendants for medically unnecessary DME.

F.   **EXCESSIVE AND MEDICALLY UNNECESSARY MEDICATIONS**

363.   Another component of the predetermined treatment protocol used by the defendants was automatic prescriptions for multiple medications written by ASMC and Total Health beginning at patients' initial evaluations.

364.   Typically the prescriptions were then billed by Troy Rx or by ASMC using the assumed name ASMC Services.

365.   The defendants' medication prescriptions were not based on particularized findings for the specific patient, but instead were selected based on the vague diagnoses of "pain" and "strains" they routinely made for every patient.

366.   ASMC's and Total Health's patients routinely received prescriptions for a similar collection of topical ointments and medications, typically including some combination of lidocaine patches, lidocaine gel, diclofenac sodium (a non-steroidal anti-inflammatory ("NSAID")), methocarbomal, Ibuprofen (an NSAID), meloxicam (an NSAID), celecoxib (an NSAID), and omeprazole.

367.   That these medications were prescribed as a matter of course, and not based on actual findings of medical need, is demonstrated by the fact that the defendant medical clinics never assessed whether the specific medications they

prescribed were actually helpful to patients during monthly reevaluations, and instead simply provided automatic refills as part of those frequent reevaluation appointments.

368. Rather than assess whether the medications they prescribed were necessary, the defendants simply copied and pasted similar, vague language into reevaluation reports claiming that the medications were medically necessary and that they were being used as prescribed, as exemplified by the following example from a reevaluation of Y.H. (Claim No. 052103652) at ASMC on September 13, 2024:

> **Medications** were prescribed as follows as there is a medical necessity indicated in the physical exam findings. I reviewed the "4 A's" of chronic opioid usage with the patient (Analgesia, ADL's, Adverse side effects, and Aberrant behavior) and determined that the patient was utilizing their medications appropriately as prescribed and discussed. Education was given regarding medication regimen, side effects and addiction. The patient has an opioid use agreement with our practice and will be subject to our protocol monitoring of urine drug screening and MAPS checking.

369. Proving that ASMC did not actually evaluate Y.H.'s use of prescribed medications, the only medication prescribed for Y.H. that was noted in the September 13, 2024 report was Ibuprofen.

370. However, at the time of that alleged reevaluation, ASMC had prescribed and provided multiple refills of omeprazole, diclofenac sodium, Lidopro patches, and baclofen to Y.H., and it provided additional refills of baclofen, omeprazole, and diclofenac sodium that same day.

371. ASMC routinely copied and pasted the same language excerpted above claiming that medications were medically necessary into numerous patient evaluation reports, which further confirms that medications were prescribed without

consideration of whether they were necessary or effective, as in the following example for B.W. (Claim No. AU-000000-67006) from a reevaluation on May 11, 2023:

-**Medications** were prescribed as follows as there is a medical necessity indicated in the physical exam findings. I reviewed the "4 A's" of chronic opioid usage with the patient (Analgesia, ADL's, Adverse side effects, and Aberrant behavior) and determined that the patient was utilizing their medications appropriately as prescribed and discussed. Education was given regarding medication regimen, side effects and addiction. The patient has an opioid use agreement with our practice and will be subject to our protocol monitoring of urine drug screening and MAPS checking.

372. Total Health followed the same improper practices as ASMC by automatically ordering a similar collection of medications for every patient, and it even included exactly the same language claiming to establish the medically necessity of the medications it prescribed as ASMC used.

373. For example, the following language is from an evaluation of V.Z. (Claim No. 053864920) on June 12, 2024, which also further demonstrates the extent to which the defendants conspired and worked together to implement their scheme to defraud Liberty Mutual across each of the defendant clinics:

**Medications** were prescribed as follows as there is a medical necessity indicated in the physical exam findings. I reviewed the "4 A's" of chronic opioid usage with the patient (Analgesia, ADL's, Adverse side effects, and Aberrant behavior) and determined that the patient was utilizing their medications appropriately as prescribed and discussed. Education was given regarding medication regimen, side effects and addiction. The patient has an opioid use agreement with our practice and will be subject to our protocol monitoring of urine drug screening and MAPS checking.

374. The medications prescribed by ASMC and Total Health typically were delivered to patients and billed by Troy Rx, which billed from the same street address as ASMC.

375.   As a result, Troy Rx was necessarily aware that medications were ordered by ASMC and Total Health pursuant to a predetermined protocol and were not medically necessary, but it continued to fill those prescriptions in order to generate unnecessary billing to Liberty Mutual.

376.   Similarly, on occasions when ASMC billed for the medications it prescribed, it necessarily was aware that they were ordered pursuant to a predetermined protocol and were not medically necessary.

377.   Liberty Mutual has no obligation to pay for medications that are prescribed as a matter of course, that are not needed by patients, and that are medically unnecessary, and it is entitled to recover all amounts it was induced to pay as a result of the defendants' improper and fraudulent medication practices.

### G.   UNNECESSARY DUPLICATIVE TREATMENT

378.   Much of the alleged treatment billed by the defendants has no possible medical necessity because, if it occurred at all, it was duplicative of other services patients were allegedly receiving at the same time.

379.   For example, Troy Chiropractic billed for chiropractic and physical therapy services that were duplicative of services the patients were receiving, often on the same day, at Faith PT or ASMC.

380.   Similarly, ASMC billed for chiropractic and physical therapy services even when patients were receiving physical therapy or chiropractic treatment at other

clinics, including physical therapy at Body in Motion or Faith PT and that had been ordered by ASMC.

381.   For example, on May 24, 2024, Troy Chiropractic billed for allegedly providing therapeutic exercise (billed using CPT code 97110) and massage therapy (billed using CPT code 97124) to M.S. (Claim No. 056817154) even though M.S. already was receiving physical therapy at Body in Motion and even though Body in Motion also billed for therapeutic exercise and manual therapy (which is inclusive of massage therapy) on the same date.

382.   As another example, both ASMC and Faith PT billed for allegedly providing manual therapy to patient A.S. (Claim No. 048168235) on numerous dates, even though ASMC had prescribed physical therapy for A.S. and was aware that she already was receiving physical therapy at Faith PT.

383.   There was no medical basis for A.S. or M.S. to receive the same treatment at two (2) different clinics on the same date.

384.   As yet another example, Y.H. (Claim No. 052103652) allegedly received chiropractic treatment, mechanical traction, therapeutic exercise, and massage therapy at Troy Chiropractic during July and August of 2024.

385.   ASMC, however, simultaneously billed for alleged physical therapy to Y.H. during the same period of time, and did so at least once on exactly the same date that Troy Chiropractic billed for physical therapy to Y.H.

386.   There was no medical reason for patients to receive the same services on the same dates from different providers, and all of the services billed by the defendants that were duplicative of other treatment patients were receiving at the same time were medically unnecessary.

## VIII.  <u>FRAUDULENT BILLING PRACTICES</u>

387.   The medical records, bills, and invoices submitted to Liberty Mutual by the defendants contained standardized billing codes.

388.   Providers like the defendants have a responsibility to select and submit billing codes that accurately and truthfully identify services performed and the complexity involved in rendering those services.

389.   The defendants failed to meet this responsibility and instead submitted bills with unreasonable charges to Liberty Mutual for medically unnecessary, unlawful, and excessive services and used fraudulent billing practices, as discussed *infra*.

390.   All of the medical records, bills, and invoices submitted to Liberty Mutual by the defendants contained CPT and Healthcare Common Procedure Coding System ("HCPCS") codes.

391.   By utilizing CPT and HCPCS codes to submit billing to Liberty Mutual, the defendants represented that the services they billed for corresponded to and were

accurately described by the published descriptions for the CPT and HCPCS codes they chose.

392.   The defendants never communicated to Liberty Mutual that they intended that the CPT and HCPCS codes they used to submit bills have any meanings other than those ascribed by the AMA and CMS, which publish CPT and HCPCS codes, respectively.

393.   Liberty Mutual reasonably relied on the representations and published definitions assigned to the CPT and HCPCS codes billed by the defendants.

394.   The bills submitted to Liberty Mutual by the defendants were submitted on Health Insurance Claim Forms ("HICF") approved by the National Uniform Claim Committee ("NUCC") and referenced in the NUCC Instruction Manual.

395.   The back of all HICF forms contains the following language in bold font: "NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

396.   Despite the warning on the back of the HICF forms, the defendants included false, incomplete, and misleading information in the bills and medical records submitted to Liberty Mutual through interstate wires and the U.S. Mail.

397.   The defendants knowingly submitted false, incomplete, and misleading bills to Liberty Mutual, including submitting bills that included inaccurate and

inappropriate CPT and HCPCS codes for the services they allegedly provided, with the intention that Liberty Mutual rely on those bills in order to make payments to the defendants to which they knew they were not entitled.

398.   Liberty Mutual relied on the bills submitted by the defendants to its detriment and was induced to make payments to the defendants to which they were not entitled as a result of the defendants' fraudulent billing practices.

### A.   FRAUDULENT UPCODING

399.   As discussed above, the defendants made misrepresentations to Liberty Mutual by submitting documentation that included CPT codes for medical services that (1) were not actually performed, (2) were not performed consistent with standards of care, and (3) were wholly unwarranted and unnecessary.

400.   The billing codes submitted to Liberty Mutual by ASMC and Total Health also consistently exaggerated the complexity of evaluations purportedly rendered in order to inflate the charges submitted to Liberty Mutual.

401.   Physician examinations of patients are billed using CPT codes that reflect the complexity involved in the examination and it is the responsibility of the provider to select the appropriate CPT code for the complexity of the examination.

402.   Initial office visits/examinations are billed using a CPT code that starts with the numbers "9920"; reexaminations are billed using a CPT code that starts

with the numbers "9921"; and consultations are billed using a CPT code that starts with the numbers "9924."

403.   The final number to complete each five-digit CPT code for examinations and consultations reports the complexity of the evaluation performed, with five (5) being the highest complexity evaluation possible.

404.   To properly bill using level five (5) complexity codes, the physician must have taken a comprehensive history, performed a comprehensive examination, and engaged in medical decision making of high complexity.

405.   To properly bill using level four (4) complexity codes, the physician must have taken a comprehensive (initial evaluation) or detailed (reevaluation) history, performed a comprehensive (initial evaluation) or detailed (reevaluation) examination, and engaged in medical decision making of moderate complexity.

406.   The AMA has guided that level five (5) initial examinations should involve approximately 60 minutes of face-to-face time with the patient, and level five (5) reexaminations should involve approximately forty (40) minutes of face-to-face time with the patient.

407.   Level four (4) examinations typically involve forty-five (45) minutes of face-to-face time, and level four (4) reexaminations typically involve twenty-five (25) minutes of face-to-face time.

408.   To warrant a medical bill demanding payment for a level four (4) examination, the injury/condition necessarily requires: moderate risk of mortality, morbidity and/or complications; moderate diagnoses and review of complex data; and requires the medical provider to: (1) obtain comprehensive patient histories; (2) conduct comprehensive examinations; and (3) evaluate the patient (face-to-face) in an interaction lasting approximately forty-five (45) minutes.

409.   Since it began billing Liberty Mutual, every initial patient examination and every reexamination for which Total Health has billed Liberty Mutual has been billed as a level four (4) examination.  *See* Exhibit 2.

410.   During the period at issue in this Complaint, ASMC billed for a level four (4) or level five (5) initial examination more than 79% of the time and billed for a level four (4) or level five (5) reexamination more than 76% of the time.  *See* Exhibit 1.

411.   ASMC and Total Health routinely billed examinations and reexaminations at level four (4) and level five (5) even though they did not come close to meeting the requirements established by the AMA to bill office visits as a level four or level five examination.

412.   As previously described, the defendants' evaluations typically involved nothing more than vague diagnoses of pain and strains, and many of the defendants'

records were largely copied and pasted between appointments and recommended a similar course of treatment for every patient.

413.    Reports for patient reexaminations almost always simply continued the same course of care that had already been prescribed (regardless of whether such course of care was improving the patients' conditions), and nearly every report copied from previous evaluation reports with only minor changes.

414.    Reports also use the same copied-and-pasted language to describe each evaluation, demonstrating that the evaluations did not satisfy the level of complexity in the examination and decision making performed required of the billing submitted by the defendants.

415.    Indeed, defendant Tobia, who was responsible for preparing much of the billing submitted by defendant ASMC, has admitted that she did not select the billing codes ASMC used for patient evaluations based on the AMA guidelines detailed above, but instead simply looked at the times patients signed in and out of the clinic (which would not even accurately reflect the patient's face-to-face time with a provider) to select the level of patient evaluation that ASMC billed.

416.    For these patient appointments resulting in formulaic reports and records based on the predetermined treatment protocol described above, and where charges that were not based on actual time spent evaluating patients, the defendants improperly upcoded bills to represent alleged complex medical evaluations.

417.   The defendants engaged in this improper and fraudulent upcoding in order to increase the amount billed to Liberty Mutual for patient appointments.

418.   As an example of the defendants' failure to satisfy the required complexity of decision making and the thoroughness of patient evaluations necessary to bill for a level four (4) reexamination, ASMC billed Liberty Mutual using CPT code 99214 for a reexamination of Y.H. (Claim No. 052103652) on June 7, 2023.

419.   The reexamination was actually just a telephone call, meaning that no physical evaluation occurred, and the provider could not even visually evaluate Y.H.

420.   Moreover, the treatment plan for Y.H. recorded in ASMC's evaluation report from June 7, 2023 (and most of the additional information included in the report) was identical to the language from the report for an alleged reevaluation of Y.H. on April 26, 2023.

421.   Even though any evaluation of Y.H. that occurred on June 7, 2023 was cursory at best and did not remotely satisfy the criteria, ASMC billed for a level four (4) reevaluation of Y.H. that day.

422.   As another example, on October 23, 2024, Total Health billed an initial evaluation of H.S. (Claim No. 058087456) as a level four (4) evaluation despite the fact that it did not complete basic functions such as recording the patient's blood pressure or other vitals, and that it did not even obtain a medical history for H.S.

423.   Further demonstrating that the October 23, 2024 evaluation of H.S. did not satisfy the requirements to bill for a level four (4) initial examination, Total Health's treatment plan consisted almost entirely of generic, copied-and-pasted language and vague descriptions of treatment.

424.   All bills submitted to Liberty Mutual by the defendants using CPT codes 99204, 99205, 99214, and 99215 as a matter of course rather than based on the actual complexity of medical decision making and assessment were fraudulently upcoded and not compensable.

### B.    FRAUDULENT DOUBLE BILLING

425.   Another way the defendants sought to and did obtain payments from Liberty Mutual to which they knew they were not entitled was by double billing for alleged services through the use of separate CPT codes and charges for services that already were included in another billing code for the same date of service.

426.   Defendant Faith PT frequently double billed by submitting separate charges for alleged physical therapy services that may not be billed on the same date as other services, because they are considered to be encompassed by those other services.

427.   For example, Faith PT routinely billed Liberty Mutual for therapeutic massage using CPT code 97124 on the same date it billed for manual therapy using CPT code 97140.

428.   Billing guidelines provide that therapeutic massage may not be billed by a provider on the same date as manual therapy because manual therapy is considered a more expansive service that encompasses massage unless it is performed on a different area of the body, clinical notes clearly document that the services were separate and distinct from one another, and CPT billing code modifier 59 is used to indicate that a separate and distinct service was provided.

429.   CPT code modifiers are used to indicate to payors that a service or procedure has been altered by some specific circumstance.

430.   Contrary to these guidelines, Fatih PT did not include CPT code modifier 59 with its billing for therapeutic massage when it also billed for therapeutic activity, and its records never properly documented that a distinct service was provided that could properly be separately billed.

431.   As one instance of this improper practice, Faith PT billed for both massage and manual therapy to patient H.D. (Claim No. 051698776) on dozens of dates between December 2022 and May 2023, but never documented that the massage therapy was a separate or distinct service.

432.   Troy Chiropractic followed a similar fraudulent practice by billing for massage on the same dates as it billed for mechanical traction, which also is not permitted by established billing guidelines.

433.   Like Faith PT, Troy Chiropractic did not include a billing modifier to identify that a separate and distinct service was provided, and its records did not document that a separate or distinct service occurred.

434.   For example, on September 19, 2023, Troy Chiropractic billed for both mechanical traction and massage with respect to patient N.D. (Claim No. AU-798349) but did not report a separate service was provided.

## IX.   EXCESSIVE AND UNREASONABLE CHARGES

435.   Claims for medical benefits under Michigan's No-Fault Act can only be made for "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."  Mich. Comp. Laws § 500.3107(1)(a).

436.   The defendants knew that the amounts they billed Liberty Mutual were unreasonable at the time the charges were submitted and intentionally billed these excessive and unreasonable amounts as part and in furtherance of their scheme to defraud Liberty Mutual by inducing it to pay the defendants monies they were not entitled to receive.

437.   The potential of receiving a windfall to which they were not entitled by charging unreasonable and excessive amounts also motivated the defendants' decision to bill Liberty Mutual for treatment not rendered and unlawful and

unnecessary treatment, and was their motivation to resort to fraudulent billing practices as described *supra*.

438. In each such case, including those described in the following subsections, Liberty Mutual was harmed when it was induced to pay the unreasonable amounts billed by the defendants.

439. Liberty Mutual also was harmed even when it did not pay the unreasonable and excessive amounts charged by the defendants, because it was nevertheless obligated to investigate and adjust each insurance claim, thereby incurring costs.

### A.   EXCESSIVE AND UNREASONABLE CHARGES FOR EXPERIMENTAL AND UNPROVEN TREATMENT

440. Because their goal was to bill as much as possible for each patient, the defendants regularly ordered and billed for experimental, unproven, and unapproved treatments and services that had no utility in the context of the kinds of soft tissue injuries allegedly experienced by the patients that were allegedly examined and treated by the defendants at issue in this case.

441. The defendants ordered and billed for these experimental, unproven, and unnecessary treatments specifically because they are not included in Medicare's or the No-Fault Act's fee schedule and the defendants believed that by doing so they could circumvent the No-Fault Act's implementation of a statutory fee schedule and

continue to demand unlimited and uncapped No-Fault benefits from insurers like Liberty Mutual.

442. Even setting aside the issues detailed in the preceding sections of this Complaint that these treatments were experimental, not indicated for patients' conditions, unapproved, and medically unnecessary, the defendants also charged excessive and unreasonable amounts for these services.

443. One such experimental and unapproved treatment was the Nervomatrix treatment billed by Core Health.

444. Each time Core Health billed for this experimental, unnecessary, and ineffective treatment, it billed both for testing that allegedly identified trigger points to be treated ("TPII," for which it typically billed $1,500), and billed separately for the treatment ("LINT," for which it generally billed $4,500).

445. As previously explained, however, these same testing and treatment services are routinely performed by physicians, chiropractors, and physical therapists without the use of a Nervomatrix machine for a small fraction of the amount billed by the defendants, and which services would have been subject to Michigan's No-Fault Act's fee schedule if billed as such.

446. Indeed, the Nervomatrix machines were approved for use by the FDA as akin to a TENS device.

447.   TENS treatment is a routine procedure that is covered by the No-Fault Act's fee schedule and paid at a tiny fraction of the amount billed by these defendants.

448.   These defendants' charges of approximately $6,000 each time they billed for Nervomatrix treatment were grossly excessive and unreasonable.

449.   Another service billed by the defendants that was experimental, unproven, and medically unnecessary in the context of the types of injuries at issue in this action was MLS laser therapy.

450.   Core Health and ASMC fraudulently billed this unnecessary purported treatment, charging Liberty Mutual more than $2,400 on each occasion.

451.   The MLS laser therapy billed by these defendants, if it occurred at all, took only minutes to perform, meaning they charged Liberty Mutual hundreds of dollars a minute for this medically useless treatment.

452.   The amounts billed by Core Health and ASMC for MLS laser therapy, none of which was medically necessary, were grossly excessive and unreasonable.

453.   These amounts charged by the defendants for experimental and unproven services were necessarily excessive and unreasonable and the defendants cannot sustain their burden of proving otherwise.

## B.   EXCESSIVE AND UNREASONABLE DME CHARGES

454.   In addition to being unlicensed, medically unnecessary, and issued contrary to applicable standards of care, as discussed *supra*, the DME billed by ASMC and Total Health was charged at unreasonable rates.

455.   As discussed above, the predetermined treatment protocol used by the defendants involved billing for the issuance of various items of DME, one of which that was frequently billed by the defendants was a lumbar back brace billed by ASMC and Total Health using HCPCS code L0631, which describes a lumbar-sacral orthosis with rigid anterior and posterior panels that must be trimmed, bent, molded, or otherwise customized by an individual with expertise to fit a specific patient.

456.   ASMC and Total Health never recorded customizing the back braced they provided, which were actually off-the-shelf braces that could be purchased for less than $100.

457.   When ASMC and Total Health billed Liberty Mutual for this lumbar back brace, they frequently charged more than $2,166, which was at least twenty times the retail cost of the item.

458.   ASMC charged similarly excessive amounts for other DME it allegedly issued, such as TENS machines, for which it typically billed Liberty Mutual in excess of $600 and often more than $760.

459.   These types of TENS machines have a retail price of less than $100, meaning the amounts billed by ASMC were at least six (6) to seven (7) times their retail cost.

460.   ASMC and Total Health also billed for so-called massage chairs using CPT code E1399, which is a miscellaneous code for DME that does not have its own specific code.

461.   When they billed for "massage chairs," which are not even legitimate medical equipment for the reasons already discussed, these defendants each billed Liberty Mutual an outrageous amount of $3250.20.

462.   In fact, the so-called "massage chairs" were not actually chairs at all but, according to the images included with defendants' bills, simply devices that can be placed on a chair:

**MASSAGE CHAIR**



463.   Similar devices have a retail price of less than $200, meaning that the defendants' charges were more than sixteen (16) times higher than their reasonable retail price, which is *per se* unreasonable.

464.   Liberty Mutual is not required to pay for DME fraudulently billed pursuant to a predetermined treatment protocol or for which it was charged more than reasonable and customary rates, and is entitled to the return of all sums paid due to the fraudulent issuance and billing of DME by the defendants.

### C.   EXCESSIVE CHARGES FOR MEDICATIONS

465.   As previously described, defendants ASMC and Total Health routinely prescribed large numbers of medications to patients as part of their implementation of the defendants' predetermined treatment protocol that were then billed either by Troy Rx or by ASMC.

466.   Troy Rx and ASMC each charged Liberty Mutual excessive and unreasonable prices for these medications that were frequently many times the retail prices of those medications in order to inflate the total billing to Liberty Mutual in furtherance of the defendants' scheme.

467.   As one example, Troy Rx routinely billed Liberty Mutual thousands of dollars for diclofenac sodium prescriptions, including frequently billing more than $3,500 for diclofenac sodium gel and more than $4,000 for diclofenac sodium solution, both of which can be obtained from retail pharmacies for significantly less

than $100, meaning that Troy Rx marked up its prices by more than 3,400% for these medications.

468.   As another example, Troy Rx often billed Liberty Mutual more than $100 for ninety (90) 800 mg ibuprofen tablets that are available from retail pharmacies for less than $10, representing a markup of more than 900% by Troy Rx.

469.   As one more example of Troy Rx's excessive and unreasonable charges, it repeatedly billed Liberty Mutal $5,127.50 for a thirty (30) day supply of omeprazole.

470.   A thirty (30) day supply of omeprazole can be purchased from a retail pharmacy for less than $20, meaning that Troy Rx marked up the price of this medication by more than 25,000%.

471.   ASMC followed a similar practice of charging outrageous and excessive amounts to Liberty Mutual for medications that it prescribed to its patients.

472.   For example, ASMC repeatedly billed Liberty Mutual $1,738 for thirty (30) Lidopro patches even though the retail price of a thirty (30) day supply of equivalent items is less than $40, representing a markup of more than 4,200% by ASMC.

473.   As another example, ASMC repeatedly billed Liberty Mutual $622 for Lidopro ointment that has a retail price of less than $25, meaning it marked up the price of those items when it billed Liberty Mutual by at least 2,388%.

474.   Liberty Mutual is not required to pay the defendants for medications prescribed and dispensed for the purpose of inflating claims to Liberty Mutual or for which they did not charge Liberty Mutual a reasonable amount.

## X.   MISREPRESENTATIONS MADE BY THE DEFENDANTS AND RELIED ON BY LIBERTY MUTUAL

### A.   MISREPRESENTATIONS BY THE DEFENDANTS

475.   To induce Liberty Mutual to pay promptly their fraudulent charges, the defendants submitted to Liberty Mutual false documentation that materially misrepresented that the services they referred and billed were necessary within the meaning of the Michigan No-Fault Act, that the charges for the same were reasonable, and that all treatment, DME, medications, testing, and services were lawfully and actually rendered.

476.   Claims for medical benefits under Michigan's No-Fault Act can only be made for "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Mich. Comp. Laws § 500.3107(1)(a).

477.   Moreover, claims for medical benefits under Michigan's No-Fault Act can only be made for services that are "lawfully render[ed]." Mich. Comp. Laws § 500.3157(1).

478.   Thus, every time the defendants submitted bills and medical records to Liberty Mutual supporting their claims for No-Fault benefits, the defendants

necessarily warranted that such bills and records related to lawfully and actually

rendered and necessary treatment for their patients' care, recovery, or rehabilitation.

479. There are no less than twelve (12) separate reasons why the defendants'

alleged treatment was not in fact performed, was not lawful, was not medically

necessary, and was fraudulently billed to Liberty Mutual:

     a. ASMC, Total Health, Faith PT, Body in Motion, and Troy Chiropractic routinely billed for medical services, testing, and medical equipment that were not actually provided;

     b. ASMC, Total Health, Faith PT, and Body in Motion falsified medical records to bill for services that were not performed and to create a false appearance of injury to justify excessive and unnecessary medical treatment and billing;

     c. ASMC, Total Health, Core Health, Faith PT, Body in Motion, and Troy Chiropractic routinely billed for medical services, testing, and medical equipment that was medically unnecessary;

     d. Core Health billed for medical services that were unnecessary and not compensable because they were experimental and ineffective, and for which Core Health had no evidence of efficaciousness;

     e. The defendants used an improper predetermined treatment protocol, implemented by use of pre-printed, boilerplate, fabricated, and exaggerated purported examination findings, to order and bill for excessive and unnecessary diagnostic testing, physical therapy, DME, transportation, medications, drug testing, and other unnecessary treatment and services;

     f. ASMC and Total Health unlawfully billed for the purported issuance of DME without possessing the licensure required by the State of Michigan;

     g. ASMC and Total Health ordered and Faith PT and Body in Motion billed for unnecessary, excessive, and unreasonably long

predetermined courses of physical therapy in furtherance of the scheme to bill Liberty Mutual as much as possible, and not based on the individual and actual needs of patients;

h. ASMC and Total Health prescribed and provided refills and Troy Rx and ASMC billed for medications that were prescribed pursuant to a predetermined treatment protocol and not based on patients' actual medical needs and without regard to whether the medications were beneficial;

i. ASMC and Troy Chiropractic billed for medical services and medical equipment that were unnecessary because they were duplicative of services patients already were receiving from other defendants or other providers;

j. ASMC and Total Health submitted claims representing that purported patient encounters were more complex than they actually were, which is a fraudulent billing practice known as upcoding;

k. Faith PT and Troy Chiropractic submitted claims seeking payment for services to which they were not entitled because they were encompassed by another service billed, which constitutes double billing; and

l. The defendants submitted bills at rates that had no basis and were many times higher than reasonable and necessary to charge for services, if such services were rendered at all.

480. As detailed *supra*, the defendants frequently violated established standards of care, treated excessively, and billed for treatment without basis or adequate substantiation.

481. If treatment is not required for a patient's care, recovery, or rehabilitation, such treatment is not medically necessary.

482. The foregoing facts – including billing for services not rendered, unlawful and unlicensed treatment, using a predetermined treatment protocol to inflate charges, fraudulent billing practices, and misrepresenting the necessity of treatment and testing – were not, and could not have been, known to Liberty Mutual until it commenced its investigation of the defendants shortly before the filing of this action.

483. The prevalence of such facts and the defendants' failure to abide by accepted standards of care render the treatment, DME, medications, and services by the defendants unnecessary and unlawful.

484. The fact of unnecessary treatment is present with respect to every patient at issue in this Complaint, including those specific patient examples set out above and in the charts annexed at Exhibits 1 through 7.

485. Thus, each claim for payment (and accompanying medical records) under Michigan's No-Fault Act faxed and mailed to Liberty Mutual by the defendants constitutes a misrepresentation because the treatment underlying the claim was not lawful and medically necessary, as it must be in order to be compensable under Michigan law.

486. Through the submission of patient records, invoices, HICFs, and other medical documentation to Liberty Mutual via faxes over interstate wires and the U.S. Mail, the defendants attested to the fact, lawfulness, and medical necessity of the

visits, examinations, testing, DME, medications, and services for which they billed Liberty Mutual.

487.   As the defendants did not render lawful and reasonably necessary medical treatment and testing, and misrepresented the treatment and testing purportedly performed, each bill and accompanying documentation faxed or mailed by or on behalf of the defendants to Liberty Mutual constitutes a material misrepresentation.

### B.   LIBERTY MUTUAL'S JUSTIFIABLE RELIANCE

488.   The documents submitted to Liberty Mutual by the defendants were designed to, and did in fact, induce Liberty Mutual to rely on the documents.

489.   At all relevant times, the defendants hid from Liberty Mutual facts regarding the fact, lawfulness, and medical necessity of services, DME, and medications allegedly provided and referred by them to prevent Liberty Mutual from discovering that the claims submitted by the defendants were not compensable under Michigan's No-Fault Act.

490.   These misrepresentations include submitting false medical documentation, including HICFs, documenting the fact, lawfulness, and necessity of medical treatment, testing, DME, medications, and services in order to seek payment under Michigan's No-Fault Act.

491.   Evidence of the wrongful scheme detailed in this Complaint was not discovered until Liberty Mutual began to investigate the defendants, revealing the true nature and full scope of their fraudulent scheme.

492.   Due to the defendants' material misrepresentations and other affirmative acts designed to hide their wrongful conduct, Liberty Mutual did not and could not have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

493.   In reliance on and as a result of the defendants' misrepresentations, Liberty Mutual paid money to the defendants and their associates to its detriment.

494.   Liberty Mutual would not have paid these monies had the defendants provided true and accurate information about the fact, lawfulness, and necessity of the referrals and medical services, medication, and DME billed.

495.   As a result, Liberty Mutual has paid hundreds of thousands of dollars to the defendants and their associates as a result of their false medical documentation and false representations regarding the defendants' eligibility for payment under the Michigan No-Fault Act.

## XI.   MAIL AND WIRE FRAUD RACKETEERING ACTIVITY

496.   As discussed above, the referrals, treatment, DME, medications, and services billed by the defendants were not medically necessary, were unlawful, were fraudulently billed, and frequently were not provided at all.

497.   The objective of the scheme to defraud Liberty Mutual, which occurred throughout the period set out in Exhibits 1 through 7, was to collect No-Fault benefits to which the defendants were not entitled because the medical services, DME, and medications provided, if at all, were not necessary, were not lawfully rendered, and were fraudulently billed.

498.   This objective necessarily required the submission of bills for payment to Liberty Mutual.

499.   The defendants created, prepared, and submitted false medical documentation and placed in a post office and/or authorized depository for mail matter things to be sent and delivered to Liberty Mutual by the United States Postal Service or sent things to Liberty Mutual through faxes over interstate wires.

500.   All documents, medical records, notes, reports, HICFs, medical diagnoses, letters, correspondence, and requests for payment in connection with the insurance claims referenced throughout this pleading traveled to Liberty Mutual through interstate wires or the U.S. Mail.

501.   Every automobile insurance claim detailed herein involved at least one (1) use of the U.S. Mail, including the mailing of, among other things, the notice of claim, insurance payments, and the return of cancelled checks.

502.   All medical records and bills submitted through interstate wires by the defendants were faxed from the defendants in Michigan to Liberty Mutual in Georgia or California.

503.   It was foreseeable to the defendants that faxing bills and medical records to Liberty Mutual would trigger mailings in furtherance of the scheme to defraud, including actual payment of fraudulent bills via checks mailed by Liberty Mutual.

504.   Every payment at issue in this Complaint where Liberty Mutual was induced to rely on the defendants' false medical records and bills was tendered via a check mailed by Liberty Mutual using the U.S. Mail.

505.   The insurance fraud scheme detailed herein generated hundreds of mailings and faxes.

506.   A chart highlighting representative examples of mail and wire fraud arising from the defendants' patient/business files is annexed hereto at Exhibit 8.

507.   As detailed herein, the defendants also submitted medical documentation and claims for payment to Liberty Mutual via fax or mail related to each exemplar patient discussed in this Complaint.

508.   It was within the ordinary course of business for ASMC, Total Health, Core Health, Faith PT, Body in Motion, Troy Chiropractic, and Troy Rx to submit

claims for No-Fault payment to insurance carriers like Liberty Mutual through interstate wires and the U.S. Mail.

509.   Moreover, the business of billing for medical services, medications, and DME by each of the entity defendants at issue herein is regularly conducted by fraudulently seeking payment to which each defendant is not entitled through the use of fraudulent communications sent via intestate wires and the U.S. Mail.

510.   In other words, discrete (claim- and patient-specific) instances of mail and wire fraud are a regular way of doing business for each of the defendants.

511.   The entity defendants, at the direction and with the knowledge of their owners and managers, including defendants Tobia and Sadek, continue to submit claims for payment to Liberty Mutual and, in some instances, continue to commence litigation against Liberty Mutual seeking to collect on unpaid claims.

512.   Thus, the defendants' commission of mail and wire fraud continues.

513.   As the defendants agreed that they would use (and, in fact, did use) the mails in furtherance of their scheme to defraud Liberty Mutual by seeking payment for services that are not compensable under the Michigan No-Fault Act, these defendants committed mail fraud, as defined in 18 U.S.C. § 1341.

514.   As the defendants agreed that they would use (and, in fact, did use) faxes over interstate wires in furtherance of their scheme to defraud Liberty Mutual

by seeking payment for services that are not compensable under the Michigan No-Fault Act, these defendants committed wire fraud, as defined in 18 U.S.C. § 1343.

515.   Liberty Mutual reasonably relied on the submissions it received from the entity defendants, including the submissions set out in Exhibits 1 through 8 annexed hereto and identified in the exemplar claims above.

516.   As the defendants agreed to pursue the same criminal objective (namely, mail and wire fraud), they committed a conspiracy within the meaning of the RICO Act, 18 U.S.C. § 1962(d), and are therefore jointly and severally liable for Liberty Mutual's damages.

## XII.   **DAMAGES**

517.   The wrongful conduct by the defendants injured Liberty Mutual in its business and property by reason of the aforesaid violations of law.

518.   Although it is not necessary for Liberty Mutual to calculate damages with specificity at this stage in the litigation, and Liberty Mutual's damages continue to accrue, Liberty Mutual's injury includes, but is not limited to, compensatory damages totaling hundreds of thousands of dollars that were paid to the defendants.

519.   The payments that constitute Liberty Mutual's compensatory damages each derive from a check sent by Liberty Mutual through the U.S. Mail.

520.   As such, the defendants knew that the U.S. Mail and interstate wires would be used as part of their scheme to defraud as the defendants only faxed and

mailed medical records and bills for the purpose of having Liberty Mutual rely on such documents and make payments in response thereto.

521.   Liberty Mutual also seeks damages, in an amount to be determined at trial, related to the cost of claims handling/adjustment for each of the claims mailed and faxed by the defendants, which includes the cost of investigation to uncover the fraudulent nature of the claims submitted by the defendants.

522.   Liberty Mutual investigated each of the defendants both individually and in connection with the comprehensive scheme detailed herein and incurred investigative and claims handling expenses with respect to each defendant.

## XIII.  CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1962(c)
### (ASMC Enterprise)
### Against Core Health Services LLC; Faith Physical Therapy LLC; Body in Motion Care Physical Therapy LLC; Troy Chiropractic Consultation LLC; Troy Rx Pharmacy LLC; Angela Tobia; and Mohamad Sadek, D.O.

523.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

524.   ASMC constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

525.   In connection with each of the claims identified in the within Complaint, defendants Core Health, Faith PT, Body in Motion, Troy Chiropractic, Troy Rx, Tobia, and Sadek (collectively, the "Count I defendants") intentionally

caused to be prepared, faxed, and mailed false medical documentation by ASMC, or knew that such false medical documentation would be faxed and mailed in the ordinary course of ASMC's business, or should have reasonably foreseen that the mailing and faxing of such false medical documentation by ASMC would occur, in furtherance of the Count I defendants' scheme to defraud.

526. The Count I defendants knew that two (2) or more faxes and mailings would be sent to demand and receive payment from Liberty Mutual on certain dates, including those mailings and faxes identified in the chart annexed hereto at Exhibit 8.

527. As documented above, the Count I defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual for medical services that were purportedly performed by ASMC, which they knew would be billed by ASMC, in order to collect payment from Liberty Mutual under applicable provisions of the Michigan No-Fault Act.

528. Tobia managed and controlled the operations of ASMC and was responsible for the preparation and submission of billing to Liberty Mutual.

529. Sadek provided purported medical services to patients at ASMC, implemented ASMC's predetermined treatment protocol, ordered and provided unnecessary services and prescriptions to patients of ASMC, and was responsible for the preparation of medical records submitted to Liberty Mutual.

530.   Faith PT and Body in Motion purported to render physical therapy services to patients based on orders and prescriptions from ASMC that they knew were fraudulent and for services that were medically unnecessary, and continued to diagnose and to provide services to patients in order to create the appearance of actual, ongoing, and significant injury that allowed ASMC to continue to bill for patient reevaluations and additional services, testing, DME, and medications.

531.   Core Health was responsible for rendering or purporting to render Nervomatrix treatment and other experimental and unnecessary medical services ordered by ASMC in order to create the appearance of actual, ongoing, and significant injury that allowed ASMC to continue to bill for patient reevaluations and additional services, testing, DME, and medications.

532.   Troy Chiropractic billed for medically unnecessary x-rays and other services ordered by ASMC as part of a predetermined treatment protocol in order to create the appearance of actual, ongoing, and significant injury that allowed ASMC to continue to bill for patient reevaluations and additional services, testing, DME, and medications.

533.   Troy Rx was responsible for fulfilling prescriptions for medications ordered by ASMC that it knew were medically unnecessary in order to create the appearance of actual, ongoing, and significant injury that allowed ASMC to continue

to bill for patient reevaluations and additional services, testing, DME, and medications and enabled the implementation of the fraudulent scheme.

534.   The Count I defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted ASMC to continue billing for unlawful and medically unnecessary treatment, if provided at all.

535.   As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to ASMC for the benefit of the Count I defendants that would not otherwise have been paid.

536.   The Count I defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

537.   By virtue of the Count I defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three (3) times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT II
## VIOLATION OF 18 U.S.C. § 1962(d)
### (ASMC Enterprise)
**Against Core Health Services LLC; Faith Physical Therapy LLC; Body in Motion Care Physical Therapy LLC; Troy Chiropractic Consultation LLC; Troy Rx Pharmacy LLC; Angela Tobia; and Mohamad Sadek, D.O.**

538. Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

539. Defendants Core Health, Faith PT, Body in Motion, Troy Chiropractic, Troy Rx, Tobia, and Sadek (collectively, the "Count II defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of ASMC.

540. The Count II defendants each agreed to further, facilitate, support, and operate the ASMC enterprise.

541. As such, the Count II defendants conspired to violate 18 U.S.C. § 1962(c).

542. The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of ASMC even though ASMC was not eligible to collect such payments by virtue of its unlawful conduct.

543. The Count II defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

544. Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count II defendants' unlawful conduct described herein.

545. By virtue of this violation of 18 U.S.C. § 1962(d), the Count II defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three (3) times the damages sustained by reason of the claims submitted by or on behalf of the Count II defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT III
## VIOLATION OF 18 U.S.C. § 1962(c)
### (Total Health Enterprise)
### Against Body in Motion Care Physical Therapy LLC; Troy Rx Pharmacy LLC; Angela Tobia; and Mohamad Sadek, D.O.

546. Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

547. Total Health constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

548. In connection with each of the claims identified in the within Complaint, defendants Body in Motion, Troy Rx, Tobia, and Sadek (collectively, the "Count III defendants") intentionally caused to be prepared, faxed, and mailed false

112

medical documentation by Total Health, or knew that such false medical documentation would be faxed and mailed in the ordinary course of Total Health's business, or should have reasonably foreseen that the mailing and faxing of such false medical documentation by Total Health would occur, in furtherance of the Count III defendants' scheme to defraud.

549.    The Count III defendants knew that two (2) or more faxes and mailings would be sent to demand and receive payment from Liberty Mutual on certain dates, including those mailings and faxes identified in the chart annexed hereto at Exhibit 8.

550.    As documented above, the Count III defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual for medical services that were purportedly performed by Total Health, which they knew would be billed by Total Health, in order to collect payment from Liberty Mutual under applicable provisions of the Michigan No-Fault Act.

551.    Tobia managed and controlled the operations of Total Health and was responsible for the preparation and submission of billing to Liberty Mutual.

552.    Sadek owned Total Health, provided purported medical services to patients at Total Health, implemented Total Health's predetermined treatment protocol, ordered unnecessary services and prescriptions to patients of Total Health,

and was responsible for the preparation of medical records submitted to Liberty Mutual,

553.   Body in Motion purported to render physical therapy services to patients based on orders and prescriptions from Total Health that it knew were fraudulent and for services that were medically unnecessary, and continued to diagnose and to provide services to patients in order to create the appearance of actual, ongoing, and significant injury that allowed Total Health to continue to bill for patient reevaluations and additional services, testing, DME, and medications.

554.   Troy Rx was responsible for fulfilling prescriptions for medications ordered by Total Health that it knew were medically unnecessary in order to create the appearance of actual, ongoing, and significant injury that allowed Total Health to continue to bill for patient reevaluations and additional services, testing, DME, and medications and enabled the implementation of the fraudulent scheme.

555.   The Count III defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted Total Health to continue billing for unlawful and medically unnecessary treatment, if provided at all.

556.   As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued

payment drafts to Total Health for the benefit of the Count III defendants that would not otherwise have been paid.

557.   The Count III defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

558.   By virtue of the Count III defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three (3) times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IV
## VIOLATION OF 18 U.S.C. § 1962(d)
### (Total Health Enterprise)
**Against Body in Motion Care Physical Therapy LLC; Troy Rx Pharmacy LLC; Angela Tobia; and Mohamad Sadek, D.O.**

559.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

560.   Defendants Body in Motion, Troy Rx, Tobia, and Sadek (collectively, the "Count IV defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Total Health.

561.   The Count IV defendants each agreed to further, facilitate, support, and operate the Total Health enterprise.

562.   As such, the Count IV defendants conspired to violate 18 U.S.C. § 1962(c).

563.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Total Health even though Total Health was not eligible to collect such payments by virtue of its unlawful conduct.

564.   The Count IV defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

565.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count IV defendants' unlawful conduct described herein.

566.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count IV defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three (3) times the damages sustained by reason of the claims submitted by or on behalf of the Count IV defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT V
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Core Health Enterprise)
### Against Allan Schwartz Medical Center PC; Body in Motion Care Physical Therapy LLC; Angela Tobia; and Mohamad Sadek, D.O.

567. Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

568. Core Health constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

569. In connection with each of the claims identified in the within Complaint, defendants ASMC, Body in Motion, Tobia, and Sadek (collectively, the "Count V defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by Core Health, or knew that such false medical documentation would be faxed and mailed in the ordinary course of Core Health's business, or should have reasonably foreseen that the mailing and faxing of such false medical documentation by Core Health would occur, in furtherance of the Count V defendants' scheme to defraud.

570. The Count V defendants knew that two (2) or more faxes and mailings would be sent to demand and receive payment from Liberty Mutual on certain dates, including those mailings and faxes identified in the chart annexed hereto at Exhibit 8.

571.   As documented above, the Count V defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual for medical services that were purportedly performed by Core Health, which they knew would be billed by Core Health, in order to collect payment from Liberty Mutual under applicable provisions of the Michigan No-Fault Act.

572.   Tobia managed and controlled the operations of Core Health and was responsible for the preparation and submission of billing and medical records and documentation for its purported services to Liberty Mutual.

573.   Sadek was responsible for ordering experimental and unnecessary treatment and services from Core Health that enabled it to submit billing to Liberty Mutual for those services.

574.   ASMC ordered experimental and unnecessary treatment and services from Core Health and falsified medical records in order to create the appearance of medical necessity for Core Health's services that enabled it to submit billing to Liberty Mutual for those services.

575.   Body in Motion permitted Core Health to utilize its facilities to provide its fraudulent, experimental, and medically unnecessary services in order to submit billing to Liberty Mutual.

576.   The Count V defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted Core Health to continue billing for unlawful and medically unnecessary treatment and services, if provided at all.

577.   As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Core Health for the benefit of the Count V defendants that would not otherwise have been paid.

578.   The Count V defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

579.   By virtue of the Count V defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three (3) times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**<u>COUNT VI</u>**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Core Health Enterprise)**
**Against Allan Schwartz Medical Center PC; Body in Motion Care Physical Therapy LLC; Angela Tobia; and Mohamad Sadek, D.O.**

580.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

119

581. Defendants ASMC, Body in Motion, Tobia, and Sadek (collectively, the "Count VI defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Core Health.

582. The Count VI defendants each agreed to further, facilitate, support, and operate the Core Health enterprise.

583. As such, the Count VI defendants conspired to violate 18 U.S.C. § 1962(c).

584. The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Core Health even though Core Health was not eligible to collect such payments by virtue of its unlawful conduct.

585. The Count VI defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

586. Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count VI defendants' unlawful conduct described herein.

587. By virtue of this violation of 18 U.S.C. § 1962(d), the Count VI defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is

entitled to recover from each three (3) times the damages sustained by reason of the claims submitted by or on behalf of the Count VI defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VII**
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(Faith PT Enterprise)**
**Against Allan Schwartz Medical Center PC and Mohamad Sadek, D.O.**

588.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

589.    Faith PT constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

590.    In connection with each of the claims identified in the within Complaint, defendants ASMC and Sadek (collectively, the "Count VII defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by Faith PT, or knew that such false medical documentation would be faxed and mailed in the ordinary course of Faith PT's business, or should have reasonably foreseen that the mailing and faxing of such false medical documentation by Faith PT would occur, in furtherance of the Count VII defendants' scheme to defraud.

591.    The Count VII defendants knew that two (2) or more faxes and mailings would be sent to demand and receive payment from Liberty Mutual on certain dates,

including those mailings and faxes identified in the chart annexed hereto at Exhibit 8.

592.   As documented above, the Count VII defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual for medical services that were purportedly performed by Faith PT, which they knew would be billed by Faith PT, in order to collect payment from Liberty Mutual under applicable provisions of the Michigan No-Fault Act.

593.   ASMC and Sadek were responsible for ordering and prescribing medically unnecessary physical therapy from Faith PT pursuant to a predetermined treatment protocol and falsified medical records in order to create the appearance of medical necessity for Faith PT's services that allowed Faith PT to submit bills to Liberty Mutual for the medically unnecessary physical therapy services described herein.

594.   ASMC and Sadek directed patients to Faith PT for the unnecessary physical therapy they ordered and prescribed because they knew Faith PT would bill for extensive, unnecessary physical therapy treatment with respect to those patients.

595.   The Count VII defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of

injury and permitted Faith PT to continue billing for unlawful and medically unnecessary physical therapy.

596.  As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Faith PT for the benefit of the Count VII defendants that would not otherwise have been paid.

597.  The Count VII defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

598.  By virtue of the Count VII defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three (3) times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VIII**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Faith PT Enterprise)**
**Against Allan Schwartz Medical Center PC and Mohamad Sadek, D.O.**

599.  Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

600.  Defendants ASMC and Sadek (collectively, the "Count VIII defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Faith PT.

601.   The Count VIII defendants each agreed to further, facilitate, support, and operate the Faith PT enterprise.

602.   As such, the Count VIII defendants conspired to violate 18 U.S.C. § 1962(c).

603.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Faith PT even though Faith PT was not eligible to collect such payments by virtue of its unlawful conduct.

604.   The Count VIII defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

605.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count VIII defendants' unlawful conduct described herein.

606.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count VIII defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three (3) times the damages sustained by reason of the claims submitted by or on behalf of the Count VIII defendants, and others acting in

concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IX
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Body in Motion Enterprise)
### Against Allan Schwartz Medical Center PC; Total Health Service P.C.; and Mohamad Sadek, D.O.

607.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

608.   Body in Motion constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

609.   In connection with each of the claims identified in the within Complaint, defendants ASMC, Total Health, and Sadek (collectively, the "Count IX defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by Body in Motion, or knew that such false medical documentation would be faxed and mailed in the ordinary course of Body in Motion's business, or should have reasonably foreseen that the mailing and faxing of such false medical documentation by Body in Motion would occur, in furtherance of the Count IX defendants' scheme to defraud.

610.   The Count IX defendants knew that two (2) or more faxes and mailings would be sent to demand and receive payment from Liberty Mutual on certain dates,

including those mailings and faxes identified in the chart annexed hereto at Exhibit 8.

611.   As documented above, the Count IX defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual for medical services that were purportedly performed by Body in Motion, which they knew would be billed by Body in Motion, in order to collect payment from Liberty Mutual under applicable provisions of the Michigan No-Fault Act.

612.   ASMC, Total Health, and Sadek were responsible for ordering and prescribing medically unnecessary physical therapy pursuant to a predetermined treatment protocol and falsified medical records in order to create the appearance of medical necessity for Body in Motion's services that allowed Body in Motion to submit bills to Liberty Mutual for the medically unnecessary physical therapy services described herein.

613.   ASMC, Total Health, and Sadek directed patients to Body in Motion for the unnecessary physical therapy they ordered and prescribed because they knew Body in Motion would bill for extensive, unnecessary physical therapy treatment with respect to those patients.

614.   The Count IX defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of

injury and permitted Body in Motion to continue billing for unlawful and medically unnecessary physical therapy.

615. As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Body in Motion for the benefit of the Count IX defendants that would not otherwise have been paid.

616. The Count IX defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

617. By virtue of the Count IX defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three (3) times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT X
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Body in Motion Enterprise)
### Against Allan Schwartz Medical Center PC; Total Health Service P.C.; and Mohamad Sadek, D.O.

618. Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

619.   Defendants ASMC, Total Health, and Sadek (collectively, the "Count X defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Body in Motion.

620.   The Count X defendants each agreed to further, facilitate, support, and operate the Body in Motion enterprise.

621.   As such, the Count X defendants conspired to violate 18 U.S.C. § 1962(c).

622.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Body in Motion even though Body in Motion was not eligible to collect such payments by virtue of its unlawful conduct.

623.   The Count X defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

624.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count X defendants' unlawful conduct described herein.

625.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count X defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is

entitled to recover from each three (3) times the damages sustained by reason of the claims submitted by or on behalf of the Count X defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XI**
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(Troy Chiropractic Enterprise)**
**Against Allan Schwartz Medical Center PC; Angela Tobia;**
**and Mohamad Sadek, D.O.**

626.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

627.    Troy Chiropractic constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

628.    In connection with each of the claims identified in the within Complaint, defendants ASMC, Tobia, and Sadek (collectively, the "Count XI defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by Troy Chiropractic, or knew that such false medical documentation would be faxed and mailed in the ordinary course of Troy Chiropractic's business, or should have reasonably foreseen that the mailing and faxing of such false medical documentation by Troy Chiropractic would occur, in furtherance of the Count XI defendants' scheme to defraud.

629.   The Count XI defendants knew that two (2) or more faxes and mailings would be sent to demand and receive payment from Liberty Mutual on certain dates, including those mailings and faxes identified in the chart annexed hereto at Exhibit 8.

630.   As documented above, the Count XI defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual for medical services that were purportedly performed by Troy Chiropractic, which they knew would be billed by Troy Chiropractic, in order to collect payment from Liberty Mutual under applicable provisions of the Michigan No-Fault Act.

631.   Tobia owned and controlled the operations of Troy Chiropractic and was responsible for all actions taken by Troy Chiropractic and its staff.

632.   ASMC and Sadek were responsible for ordering unnecessary x-rays, chiropractic services, and other medical services from Troy Chiropractic pursuant to their predetermined treatment protocol and falsified medical records in order to create the appearance of medical necessity for Troy Chiropractic's services that allowed Troy Chiropractic to submit bills to Liberty Mutual for the medically unnecessary services.

633.   The Count XI defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of

injury and permitted Troy Chiropractic to continue billing for unlawful and medically unnecessary medical services, if provided at all.

634.   As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued payment drafts to Troy Chiropractic for the benefit of the Count XI defendants that would not otherwise have been paid.

635.   The Count XI defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

636.   By virtue of the Count XI defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three (3) times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XII
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Troy Chiropractic Enterprise)
### Against Allan Schwartz Medical Center PC; Angela Tobia;
### and Mohamad Sadek, D.O.

637.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

638.   Defendants ASMC, Tobia, and Sadek (collectively, the "Count XII defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Troy Chiropractic.

639.   The Count XII defendants each agreed to further, facilitate, support, and operate the Troy Chiropractic enterprise.

640.   As such, the Count XII defendants conspired to violate 18 U.S.C. § 1962(c).

641.   The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Troy Chiropractic even though Troy Chiropractic was not eligible to collect such payments by virtue of its unlawful conduct.

642.   The Count XII defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

643.   Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count XII defendants' unlawful conduct described herein.

644.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XII defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is

entitled to recover from each three (3) times the damages sustained by reason of the claims submitted by or on behalf of the Count XII defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XIII
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Troy Rx Enterprise)
### Against Allan Schwartz Medical Center PC; Total Health Service P.C.; and Mohamad Sadek, D.O.

645.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

646.   Troy Rx constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, and the activities of which affect, interstate commerce.

647.   In connection with each of the claims identified in the within Complaint, defendants ASMC, Total Health, and Sadek (collectively, the "Count XIII defendants") intentionally caused to be prepared, faxed, and mailed false medical documentation by Troy Rx or knew that such false medical documentation would be faxed and mailed in the ordinary course of Troy Rx's business, or should have reasonably foreseen that the mailing and faxing of such false medical documentation by Troy Rx would occur, in furtherance of the Count XIII defendants' scheme to defraud.

648.    The Count XIII defendants knew that two (2) or more faxes and mailings would be sent to demand and receive payment from Liberty Mutual on certain dates, including those mailings and faxes identified in the chart annexed hereto at Exhibit 8.

649.    As documented above, the Count XIII defendants repeatedly and intentionally submitted, caused to be submitted, or knew that documentation would be submitted to Liberty Mutual for medications that were purportedly supplied by Troy Rx, which they knew would be billed by Troy Rx, in order to collect payment from Liberty Mutual under applicable provisions of the Michigan No-Fault Act.

650.    ASMC, Total Health, and Sadek were responsible for prescribing and ordering unnecessary medications from Troy Rx pursuant to their predetermined treatment protocol and falsified medical records in order to create the appearance of medical necessity for the medications they ordered that allowed Troy Rx to submit bills to Liberty Mutual for the medically unnecessary services.

651.    The Count XIII defendants submitted, and caused to be submitted, false and fraudulent medical records, bills, and invoices that created the appearance of injury and permitted Troy Rx to continue billing for medically unnecessary medications, if provided at all.

652.    As a result of, and in reasonable reliance on, these misleading documents and representations, Liberty Mutual, by its agents and employees, issued

payment drafts to Troy Rx for the benefit of the Count XIII defendants that would not otherwise have been paid.

653.    The Count XIII defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

654.    By virtue of the Count XIII defendants' violation of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three (3) times the damages sustained by reason of the claims submitted, caused to be submitted, or known to be submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

<u>**COUNT XIV**</u>
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(Troy Rx Enterprise)**
**Against Allan Schwartz Medical Center PC; Total Health Service P.C.; and Mohamad Sadek, D.O.**

655.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

656.    Defendants ASMC, Total Health, and Sadek (collectively, the "Count XIV defendants") conspired with each other to violate 18 U.S.C. § 1962(c) through the facilitation of the operation of Troy Rx.

657.    The Count XIV defendants each agreed to further, facilitate, support, and operate the Troy Rx enterprise.

658. As such, the Count XIV defendants conspired to violate 18 U.S.C. § 1962(c).

659. The purpose of the conspiracy was to obtain insurance payments from Liberty Mutual on behalf of Troy Rx even though Troy Rx was not eligible to collect such payments by virtue of its unlawful conduct.

660. The Count XIV defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including inter-referrals between themselves and the creation and submission to Liberty Mutual of insurance claim and medical record documents containing material misrepresentations.

661. Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make insurance payments as a result of the Count XIV defendants' unlawful conduct described herein.

662. By virtue of this violation of 18 U.S.C. § 1962(d), the Count XIV defendants are jointly and severally liable to Liberty Mutual and Liberty Mutual is entitled to recover from each three (3) times the damages sustained by reason of the claims submitted by or on behalf of the Count XIV defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XV
## COMMON LAW FRAUD
### Against All Defendants

663.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

664.   The scheme to defraud perpetrated by defendants ASMC, Total Health, Core Health, Faith PT, Body in Motion, Troy Chiropractic, Troy Rx, Tobia, and Sadek ("Count XV defendants") was dependent upon a succession of material misrepresentations of fact that the defendants were entitled to collect benefits pursuant to applicable provisions of the Michigan No-Fault Act.

665.   The misrepresentations of fact made by the Count XV defendants include those material misrepresentations discussed in section X.A, *supra*.

666.   The Count XV defendants' representations were false or required disclosure of additional facts to render the information furnished not misleading.

667.   The misrepresentations were intentionally made by the Count XV defendants in furtherance of their scheme to defraud Liberty Mutual by submitting, causing to be submitted, or knowing that non-compensable claims for payment pursuant to applicable provisions of the Michigan No-Fault Act would be submitted to Liberty Mutual.

668.   The Count XV defendants' misrepresentations were known to be false and were made for the purpose of inducing Liberty Mutual to make payments for claims that are not compensable under Michigan law.

669.   Liberty   Mutual   reasonably   relied   upon   such   material misrepresentations to its detriment in paying numerous non-meritorious bills for alleged medical expenses pursuant to insurance claims and in incurring expenses related to the adjustment and processing of claims submitted by the defendants.

670.   As a direct and proximate result of the defendants' fraudulent representations and acts, Liberty Mutual has been damaged in its business and property as previously described herein.

## COUNT XVI
## CIVIL CONSPIRACY
### Against All Defendants

671.   Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

672.   Defendants ASMC, Total Health, Core Health, Faith PT, Body in Motion, Troy Chiropractic, Troy Rx, Tobia, and Sadek ("Count XVI defendants") combined and acted in concert to accomplish the unlawful purpose of defrauding Liberty Mutual by submitting claims for payment pursuant to applicable provisions of the Michigan No-Fault Act to which they were not entitled because (1) the defendants did not actually render the treatment or provide the DME and

medications for which claims were submitted, (2) the defendants did not provide reasonably necessary medical treatment, DME, and medications, (3) the defendants did not lawfully render treatment, DME, and medications, and (4) the defendants engaged in fraudulent billing practices.

673.   The Count XVI defendants worked together to achieve an unlawful purpose (namely, defrauding Liberty Mutual for personal gain).

674.   This purpose was known to all of the Count XVI defendants and intentionally pursued.

675.   Indeed, as detailed above, the Count XVI defendants engaged in inter-referrals to each other so that each could submit improper bills to Liberty Mutual.

676.   The defendants also shared common ownership, control, and management, including through defendants Tobia and Sadek.

677.   The defendants also shared facilities, medical forms and documentation, and equipment as part of their scheme to submit billing to Liberty Mutual.

678.   Despite knowing that the defendants were not entitled to payment pursuant to applicable provisions of the Michigan No-Fault Act because they billed for services that were not actually provided, because they billed for services that were not reasonably necessary, because treatment was not lawfully rendered, and because they engaged in fraudulent billing practices, the Count XVI defendants

nonetheless submitted, caused to be submitted, or knew that claims would be submitted (with accompanying false medical documentation) to Liberty Mutual seeking payment.

679.    In reasonable reliance on and as a result of the false medical documentation submitted by the defendants, Liberty Mutual paid certain of the claims submitted.

680.    All of the Count XVI defendants directly benefited from the payments made to ASMC, Total Health, Core Health, Faith PT, Body in Motion, Troy Chiropractic, and Troy Rx.

681.    All of the Count XVI defendants actively and intentionally partook in a scheme to defraud Liberty Mutual and also encouraged and aided other Count XVI defendants in the commission of acts done for the benefit of all Count XVI defendants and to the unjustified detriment of Liberty Mutual.

682.    Accordingly, all of the Count XVI defendants are equally liable for the fraud perpetrated on Liberty Mutual pursuant to their conspiracy.

**COUNT XVII**
**PAYMENT UNDER MISTAKE OF FACT**
**Against Allan Schwartz Medical Center PC; Total Health Service P.C.; Core Health Services LLC; Faith Physical Therapy LLC; Body in Motion Care Physical Therapy LLC; Troy Chiropractic Consultation LLC; and Troy Rx Pharmacy LLC**

683.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

684.    Liberty Mutual paid the amounts described herein under a misunderstanding, misapprehension, error, fault, or ignorance of material facts, namely, the scheme to defraud Liberty Mutual by misrepresenting the fact, lawfulness, and necessity of services, DME, and medications purportedly provided and billed by ASMC, Total Health, Core Health, Faith PT, Body in Motion, Troy Chiropractic, and Troy Rx ("Count XVII defendants").

685.    Liberty Mutual sustained damages by paying under a mistake of fact the claims submitted by the Count XVII defendants, which misrepresented the fact, reasonableness, necessity, and lawfulness of the medical services, medications, and DME allegedly rendered.

686.    The Count XVII defendants, individually and jointly, would be unjustly enriched if permitted to retain the payments made to them by Liberty Mutual under a mistake of fact.

687.    Liberty Mutual is entitled to restitution from each of the Count XVII defendants, individually and jointly, for all monies paid to and/or received by them from Liberty Mutual.

688.    The Count XVII defendants' retention of these payments would violate fundamental principles of justice, equity, and good conscience.

## COUNT XVIII
### UNJUST ENRICHMENT
### Against All Defendants

689.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

690.    Defendants ASMC, Total Health, Core Health, Faith PT, Body in Motion, Troy Chiropractic, Troy Rx, Tobia, and Sadek ("Count XVIII defendants") submitted, caused to be submitted, or benefited from claims submitted to Liberty Mutual that caused Liberty Mutual to pay money, in reasonable belief that it was legally obligated to make such payments based upon the defendants' fraudulent misrepresentations.

691.    Liberty Mutual's payments constitute a benefit which the Count XVIII defendants aggressively sought and voluntarily accepted.

692.    The Count XVIII defendants wrongfully obtained or benefited from payments from Liberty Mutual through the wrongful conduct detailed herein.

693.    The Count XVIII defendants' retention of these payments would violate fundamental principles of justice, equity, and good conscience.

## COUNT XIX
### DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### Against All Defendants

694.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 522 set forth above as if fully set forth herein.

695.    Defendants ASMC, Total Health, Core Health, Faith PT, Body in Motion, Troy Chiropractic, Troy Rx, Tobia, and Sadek ("Count XIX defendants") routinely billed for unnecessary and unlawful services with respect to the patients at issue in this Complaint.

696.    The Count XIX defendants also billed for services not rendered.

697.    The Count XIX defendants also billed for services pursuant to wrongful conduct whereby patients were subjected to a predetermined treatment protocol for the purpose of generating claims to Liberty Mutual, and not for the purpose of providing reasonably necessary medical treatment, DME, or medications.

698.    Pursuant to the Michigan No-Fault Act, an insurer is liable to pay benefits only for reasonable and necessary expenses for lawfully rendered treatment arising out of a motor vehicle accident.   Mich. Comp. Laws §§ 500.3105 and 500.3107.

699.    The lack of reasonableness and necessity are defenses to an insurer's obligation to pay No-Fault benefits arising out of a motor vehicle accident.   Mich. Comp. Laws § 500.3107.

700.    The lack of lawfully-rendered treatment (such as treatment arising from illegal solicitation and unlicensed treatment) is also a defense to an insurer's obligation to pay No-Fault benefits.   Mich. Comp. Laws §§ 500.3157(1).

701.   Where a provider is unable to show that an expense has been incurred for a reasonably necessary product or service arising out of a motor vehicle accident, there can be no finding of a breach of the insurer's duty to pay, and thus no finding of liability with regard to that expense.

702.   The Count XIX defendants continue to submit claims under applicable provisions of the Michigan No-Fault Act for unnecessary and unlawfully rendered medical services to Liberty Mutual, and other claims remain pending with Liberty Mutual.

703.   The Count XIX defendants will continue to submit claims under applicable provisions of the Michigan No-Fault Act absent a declaration by this Court that Liberty Mutual has no obligation to pay pending and previously-denied insurance claims submitted by any of the Count XIX defendants for any or all of the reasons set out in the within Complaint.

704.   Accordingly, Liberty Mutual requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XIX defendants, jointly and severally, billed for unnecessary and unlawful treatment that is not compensable under applicable provisions of the Michigan No-Fault Act.

705.   Liberty Mutual also requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XIX defendants, jointly and severally, were engaged in a wrongful scheme whereby they billed for

unnecessary and unlawful treatment and submitted unreasonable charges for the same to Liberty Mutual at all relevant times.

706. As such, the Count XIX defendants have no standing to submit, pursue, or receive benefits or any other payment from Liberty Mutual, and Liberty Mutual requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XIX defendants, jointly and severally, cannot seek payment from Liberty Mutual for benefits under Michigan's No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq.*, any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the wrongful conduct detailed in the within Complaint.

707. Liberty Mutual further requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the Count XIX defendants, jointly and severally, cannot balance bill or otherwise seek payment from any person insured under a Liberty Mutual policy or for whom Liberty Mutual is the responsible payor related to the wrongful conduct detailed in the within Complaint.

## XIV. **DEMAND FOR RELIEF**

WHEREFORE, plaintiffs Liberty Mutual Personal Insurance Company, LM Insurance Corporation, LM General Insurance Company, American Economy Insurance Company, Safeco Insurance Company of Illinois, State Automobile Mutual Insurance Company, State Auto Property and Casualty Insurance Company,

and Liberty Surplus Insurance Corporation respectfully pray that judgment enter in their favor as follows:

## COUNT I
## VIOLATION OF 18 U.S.C. § 1962(c)
## (ASMC Enterprise)
**Against Core Health Services LLC; Faith Physical Therapy LLC; Body in Motion Care Physical Therapy LLC; Troy Chiropractic Consultation LLC; Troy Rx Pharmacy LLC; Angela Tobia; and Mohamad Sadek, D.O.**

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT II
## VIOLATION OF 18 U.S.C. § 1962(d)
## (ASMC Enterprise)
**Against Core Health Services LLC; Faith Physical Therapy LLC; Body in Motion Care Physical Therapy LLC; Troy Chiropractic Consultation LLC; Troy Rx Pharmacy LLC; Angela Tobia; and Mohamad Sadek, D.O.**

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT III
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Total Health Enterprise)
### Against Body in Motion Care Physical Therapy LLC; Troy Rx Pharmacy LLC; Angela Tobia; and Mohamad Sadek, D.O.

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT IV
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Total Health Enterprise)
### Against Body in Motion Care Physical Therapy LLC; Troy Rx Pharmacy LLC; Angela Tobia; and Mohamad Sadek, D.O.

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT V
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Core Health Enterprise)
**Against Allan Schwartz Medical Center PC; Body in Motion Care Physical Therapy LLC; Angela Tobia; and Mohamad Sadek, D.O.**

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT VI
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Core Health Enterprise)
**Against Allan Schwartz Medical Center PC; Body in Motion Care Physical Therapy LLC; Angela Tobia; and Mohamad Sadek, D.O.**

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT VII
## VIOLATION OF 18 U.S.C. § 1962(c)
### (Faith PT Enterprise)
### Against Allan Schwartz Medical Center PC and Mohamad Sadek, D.O.

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT VIII
## VIOLATION OF 18 U.S.C. § 1962(d)
### (Faith PT Enterprise)
### Against Allan Schwartz Medical Center PC and Mohamad Sadek, D.O.

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT IX
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Body in Motion Enterprise)
### Against Allan Schwartz Medical Center PC; Total Health Service P.C.; and Mohamad Sadek, D.O.

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT X
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Body in Motion Enterprise)
### Against Allan Schwartz Medical Center PC; Total Health Service P.C.; and Mohamad Sadek, D.O.

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XI
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Troy Chiropractic Enterprise)
### Against Allan Schwartz Medical Center PC; Angela Tobia;
### and Mohamad Sadek, D.O.

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)    GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XII
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Troy Chiropractic Enterprise)
### Against Allan Schwartz Medical Center PC; Angela Tobia;
### and Mohamad Sadek, D.O.

(a)    AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT XIII
### VIOLATION OF 18 U.S.C. § 1962(c)
### (Troy Rx Enterprise)
### Against Allan Schwartz Medical Center PC; Total Health Service P.C.; and Mohamad Sadek, D.O.

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

### COUNT XIV
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Troy Rx Enterprise)
### Against Allan Schwartz Medical Center PC; Total Health Service P.C.; and Mohamad Sadek, D.O.

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial;

(b)     AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorney's fees;

(c)     GRANT Liberty Mutual injunctive relief enjoining the defendants from engaging in the wrongful conduct alleged in the within Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XV
**COMMON LAW FRAUD**
**Against All Defendants**

(a)     AWARD Liberty Mutual its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Liberty Mutual its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' wrongful conduct; and

(c)     GRANT all other relief this Court deems just.

## COUNT XVI
**CIVIL CONSPIRACY**
**Against All Defendants**

(a)     AWARD Liberty Mutual its actual and consequential damages against the defendants jointly and severally in an amount to be determined at trial;

(b)     AWARD Liberty Mutual its costs, including, but not limited to, investigative costs incurred in the detection of the defendants' wrongful conduct; and

(c)     GRANT all other relief this Court deems just.

## COUNT XVII
### PAYMENT UNDER MISTAKE OF FACT
**Against Allan Schwartz Medical Center PC; Total Health Service P.C.; Core Health Services LLC; Faith Physical Therapy LLC; Body in Motion Care Physical Therapy LLC; Troy Chiropractic Consultation LLC; and Troy Rx Pharmacy LLC**

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial; and

(b)     GRANT all other relief this Court deems just.

## COUNT XVIII
### UNJUST ENRICHMENT
**Against All Defendants**

(a)     AWARD Liberty Mutual its actual and consequential damages in an amount to be determined at trial; and

(b)     GRANT all other relief this Court deems just.

## COUNT XIX
### DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
**Against All Defendants**

(a)     DECLARE that Liberty Mutual has no obligation to pay pending and previously-denied insurance claims submitted by Allan Schwartz Medical Center PC; Total Health Service P.C.; Core Health Services LLC; Faith Physical Therapy LLC; Body in Motion Care Physical Therapy LLC; Troy Chiropractic Consultation LLC; Troy Rx Pharmacy LLC; Angela Tobia; and Mohamad Sadek, D.O., jointly and severally, for any or all of the reasons set out in the within Complaint;

(b)    DECLARE that Allan Schwartz Medical Center PC; Total Health Service P.C.; Core Health Services LLC; Faith Physical Therapy LLC; Body in Motion Care Physical Therapy LLC; Troy Chiropractic Consultation LLC; Troy Rx Pharmacy LLC; Angela Tobia; and Mohamad Sadek, D.O., jointly and severally, cannot seek payment from Liberty Mutual pursuant to the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*., any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the wrongful conduct detailed in the within Complaint;

(c)    DECLARE that Allan Schwartz Medical Center PC; Total Health Service P.C.; Core Health Services LLC; Faith Physical Therapy LLC; Body in Motion Care Physical Therapy LLC; Troy Chiropractic Consultation LLC; Troy Rx Pharmacy LLC; Angela Tobia; and Mohamad Sadek, D.O., jointly and severally, cannot balance bill or otherwise seek payment from any person insured under an Liberty Mutual policy and/or for whom Liberty Mutual is the responsible payor related to the wrongful conduct detailed in the within Complaint; and

(d)    GRANT such other relief as this Court deems just and appropriate under Michigan law and the principles of equity.

## XV.    <u>DEMAND FOR JURY TRIAL</u>

The plaintiffs hereby demand a trial by jury on all claims.

Respectfully submitted,

KTM

*/s/ Andrew H. DeNinno*

_____
Andrew H. DeNinno (P87678)
adeninno@ktmpc.com
Brad A. Compston
bcompston@ktmpc.com
Emma S. Funnell
efunnell@ktmpc.com
38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000

350 Granite Street, Suite 2204
Braintree, MA 02184
(617) 770-2214

Dated:  March 9, 2026                    *Attorneys for Plaintiffs*